## Trignani's Case.

Argued October 8, 1941.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Bernard R. Cohn,* for appellant.

*Raymond V. John,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY HIRT, J., February 28, 1942:

In the evening of September 25, 1940, Israel Trignani, the minor appellant, drove an automobile through the intersection of two streets in Philadelphia. It was not dark but because of excessive speed or lack of control of the automobile he failed to see a woman pedestrian, who had committed herself to the crossing, in time to avoid striking her. She was thrown into the air to the height of the automobile and was most seriously injured. Trignani did not stop after striking the woman but attempted to elude the driver of another car who was following him. His car was forced to the curb some distance from the scene of the injury and he was turned over to the police. He was then just under 18 years of age and was brought into the Municipal Court on a petition alleging that he was a juvenile delinquent. After hearing, the court, on February 25, 1941, made this order: "Probation, to pay $1,040 at rate of $10 per week for a period of two years. Restitution through the Court." The boy failed to make these payments and on June 3, 1941 was again brought into court and the following order was made: "Committed to White Hill. Hold in County Prison for two weeks." The boy was then committed to the county prison. Thereafter, a petition for discharge on habeas corpus was dismissed on July 25, 1941 and he was remanded to custody; he remained in the county prison until released on August 1, 1941, after the appeal to this court.

The original order was improper. In placing a juve-

nile on probation, a court undoubtedly may impose such terms as will bring home to the minor a realization of the seriousness of his delinquency. But the terms imposed must be wholly in the interest of the child, looking toward his reformation and not to make good the damages flowing from his illegal act. From that viewpoint the order is subject to valid criticism. It, in effect, bound the boy to servitude and compelled him to surrender all that he could possibly earn for the period of two years. By its severity, it invited further delinquency and revolt against the authority of the court. But the order in itself indicates that reformation was not its primary purpose. By requiring the minor to make "restitution through the court" to the injured woman, the court assumed jurisdiction to determine civil liability and to execute its finding. This is not a function of a juvenile court and is entirely outside of its jurisdiction. Its purpose is not the satisfaction of civil damages, but, "that evil tendencies may be checked" by means of "such care, guidance and control as are essential to children in the formative period of life." Act of June 2, 1933, P. L. 1433, preamble, 11 PS 243; *Com. v. Fisher*, 213 Pa. 48, 62 A. 198.

The amendment of June 15, 1939, P. L. 394, changed the former law, notably by increasing the jurisdiction of the juvenile court to include all delinquent, dependent and neglected children under *eighteen* years of age. But in thus extending the juvenile court age by two years, the law, relating to the detention or commitment of children under sixteen, remained the same.[1] By §6, children over sixteen and under eighteen

---

[1] It has long been the declared policy of the state, that children under sixteen years of age under restraint in a place of confinement, be kept apart from "adults charged with or convicted of crime." Act of June 12, 1893, P. L. 459. The Act of May 21, 1901, P. L. 279, (declared unconstitutional in *Mansfield's Case*, 22 Pa. Superior Ct. 224) and the Act of April 23, 1903, P. L. 274, contained similar provisions. The present Juvenile Court

may be confined "in any place of detention maintained and provided for custody of adults awaiting trial" but only *pending final disposition* of the case.

The minor in this case, by failing to stop and render assistance was guilty of a violation of §1025 of the Vehicle Code of May 1, 1929, P. L. 905, 75 PS 634. He might have, and perhaps should have been indicted for that misdemeanor in a court of quarter sessions. If the minor, under indictment, is sixteen or over and less than eighteen years of age, the quarter sessions may proceed with the trial and, on conviction, sentence the defendant, or "at its discretion" may transfer such case to the juvenile court. §14 of the 1939 amendment. The municipal court, in the boy in question, no doubt, was dealing with a difficult subject; the processes of a juvenile court, perhaps, were inadequate. But having assumed jurisdiction under the authority given it by the juvenile court acts the Municipal Court was limited to the powers so granted.

The Act of 1933 in §8, 11 PS 250, provides that after hearing, if the judge determines that "the best interests and welfare of a child and the State require the care, guidance and control of such child" the delinquent may be dealt with in accordance with any of the provisions of subsections (a) through (d) of §8 of that act. By subsection (e) of the amendment, a minor between the ages of sixteen and eighteen may be committed "to any state industrial school or home for the reformation and correction of youths above the age of sixteen." There is no authority for the sentence of a minor, by a juvenile court, to a county prison. The minor in this case was charged with delinquency; his violation of the criminal law was but evidence of it.

Law, the Act of 1933, as amended, 11 PS 249, prohibits the confinement of a child under sixteen years of age "pending or after hearing before the juvenile court in any county jail, workhouse, police station, lockup, or other institution in which adults are confined."

The processes of the criminal law never attached and the penalty of a substantive offense could not be imposed, on a finding of delinquency, or any other finding, by the juvenile court.[2]

The commitment to the county prison cannot be justified as a sentence for contempt because of the failure of appellant to comply with the former order. Attachment for contempt is not among the powers of the juvenile court. In its practical aspects, in dealing with a difficult child, the processes of a juvenile court, of necessity, may be those of trial and error, always having in mind, however, the reformation of the child and not punishment for what he has done, or for his failure to comply with an order.

The order is reversed with a procedendo.

---

[2] The preamble, Act of 1933, recites: "...... that the real interests of such children require that they be not incarcerated in jails and penitentiaries, as members of the criminal class ...... To these ends, it is important that the powers of the courts, with respect to the care, guidance and control over delinquent, neglected and dependent children should be clearly distinguished from those exercised in the ordinary administration of the criminal law."