Commonwealth, Appellant, *v.* Harradine.

452

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Burton R. Laub,* District Attorney, with him *Wayne A. Gleeten,* Assistant District Attorney, for appellant.

*Charles A. Mertens,* for appellee.

*Robert H. Chase,* amicus curiae.

OPINION BY KELLER, P. J., April 15, 1942:

William Harradine, having been found guilty of assault with intent to rape, was sentenced by the Court of Oyer and Terminer of Erie County to imprisonment in the Western State Penitentiary, by separate or solitary imprisonment at labor, for an indefinite term, to be computed from February 17, 1940, of not less than two years nor more than four years.

On March 17, 1941, pursuant to the Act of July 11, 1923, P. L. 1044[1], authorizing the transfer, by reason of overcrowded conditions, etc., of prisoners confined

---

, [1] As amended by Acts of April 23, 1929, P. L. 640 and April 25, 1929, P. L. 696.

in any penitentiary, prison, etc., to another prison, penitentiary, etc., the Court of Quarter Sessions of Allegheny County—where said Western State Penitentiary is located—on petition of the warden of said penitentiary, at the direction of its board of trustees and with the approval of the Department of Welfare, authorized and empowered William Harradine's transfer from the Western State Penitentiary to the Erie County prison, and he was accordingly transferred to said Erie County prison on April 2, 1941.

On July 24, 1941, seven months before the expiration of his minimum term, Harradine presented his petition to the Court of Oyer and Terminer and Quarter Sessions of Erie County asking for his parole under the Act of June 19, 1911, P. L. 1059, as amended by Acts of May 5, 1921, P. L. 379, and May 11, 1923, P. L. 204, 61 PS §314, and after hearing, the president judge of said court, on August 8, 1941, granted his petition and paroled him, placing him in charge of a designated probation officer.

On December 22, 1941, the District Attorney of Erie County, at the direction of the Attorney General, and on behalf of the Commonwealth, moved the said court to strike said order of parole of August 8, 1941 from its records, on the ground that it was void for want of jurisdiction in the court to make it. The same day the court refused the motion, "the appeal time having elapsed." The Commonwealth appealed.

The question involved is the power and authority of the court below, under the Act of June 19, 1911, P. L. 1059, to parole William Harradine, a convict legally sentenced to the Western State Penitentiary, and subsequently transferred, because of overcrowded conditions, to the Erie County jail, pursuant to the Act of July 11, 1923, P. L. 1044, and its amendments.

We hold that it has no such power and authority, and that the order paroling the prisoner was void and must be rescinded and revoked.

The learned president judge of the court below based his authority to parole Harradine upon the word, 'confined', in said Act of June 19, 1911, P. L. 1059 (as amended by Acts of May 5, 1921, P. L. 379, and May 11, 1923, P. L. 204), in the clause granting the judges of the courts of quarter sessions and courts of oyer and terminer authority "to release on parole *any convict confined* in the county jail, house of correction, or workhouse of their respective districts, . . . . . . and place him or her in charge and under the supervision of a designated probation officer." (Italics supplied). He argues that Harradine is *confined* in the Erie County jail and, hence, the statute expressly gives the judges of the courts of quarter sessions and oyer and terminer of that county the power and authority exercised by him. In our opinion, the conclusion does not follow.

When the Act of June 19, 1911, P. L. 1059, and its amendments of May 5, 1921, P. L. 379, and May 11, 1923, P. L. 204, were passed, there was no way by which a *convict could be confined* in a county jail except by a sentence of the court of that county. It is clear, then, that the purpose of the act was to give the court which had sentenced him to imprisonment in the county jail or prison the power and authority to parole him.

If the penalty fixed for a crime called for simple imprisonment, the sentence had to be to the county jail. If the statute defining the crime and fixing the penalty specifically gave the court the *option* of sentencing the convict to either the penitentiary or the county jail, the sentence might properly be to either. In only two other classes of cases might the sentence be to the county jail. (1) If the sentence was for less than a year (sec. 75 of the Criminal Procedure Act of 1860, P. L. 427), and (2) where the county prison was, at the passage of the Criminal Procedure Act, or afterwards, authorized by law to receive convicts sentenced to imprisonment at labor, by separate or solitary confine-

ment, and still remained so authorized. See *Com. v. Arbach,* 113 Pa. Superior Ct. 137, pp. 138-146, 172 A. 311; *Com. v. Renya,* 91 Pa. Superior Ct. 90, 93-94.

These made up the prisoners or convicts who were or could be *confined* in the county jail, etc., prior to the passage of the Act of July 11, 1923, P. L. 1044. Under that act prisoners sentenced to penitentiaries might, by reason of overcrowding, or other existing conditions, be transferred to county jails, but the act and its amendments aforesaid, show a clear intent to preserve to the penitentiary authorities the control of their release on parole. Section 4 of that act and of its amendment of April 25, 1929, P. L. 696, provides: "Such person or persons as may be so transferred or retransferred, shall be subject to the same term of imprisonment as that imposed upon them at the time of sentence under law, *as attached to sentence at the time the same was imposed, either as to parole or as to commutation by reason of good behavior.*" (Italics supplied).

Construing this clause, the Supreme Court said in *Com. v. Sweeney,* 281 Pa. 550, 127 A. 226, upholding the constitutionality of the Ludlow Act of June 29, 1923, P. L. 975: "Nor can it be said the operation of this act discriminates in favor of prisoners in penitentiaries standing convicted of felonies identical with those convicted of the same offense, confined in county prisons. Each class of criminals is treated equally with all of the other members in the same situation, and though the Transfer Act of 1923 (Act of July 11, 1923, P. L. 1044), makes possible the removal of prisoners from penitentiaries, and placing them in local institutions, yet it is expressly provided by section four that 'such person or persons as may be so transferred or retransferred shall be subject to the same term of imprisonment as that imposed upon them at the time of sentence under law, as attached to sentence at the time the same was imposed, either as to parole or as to commutation by

reason of good behavior.' Therefore it cannot be suc-, cessfully contended, as suggested by the court below,. *that the transfer from a penitentiary to a local prison would take the prisoner out of the class to which he was committed when sentenced, with the possible result that his imprisonment might be reduced below the minimum designated by the sentencing judge."* (Italics supplied). In other words, the Supreme Court, speaking through Mr. Justice SADLER, said that the court of the county to which the penitentiary prisoner was transferred, could not do what the court below has attempted to do. here, reduce the convict's imprisonment below the minimum designated by the sentencing judge.

The Act of July 11, 1923, P. L. 1044, contemplates the transfer of prisoners from one penitentiary or prison to another prison or penitentiary when conditions require it, and the retransfer of such prisoners, when such conditions are remedied; but it contemplates that the penitentiary authorities shall have control of the release on parole of penitentiary prisoners, even. though confined in county jails, under that Act— and this parole can only be granted after the expiration of their minimum sentences—and, correspondingly, that the courts shall continue to have control of the parole and commutation of prisoners whom they have sentenced to the county jail. In this way, there is no conflict of authority as respects the parole of prisoners. The language of the act excludes. any idea of extending to local courts the power to. parole *penitentiary* prisoners who may be temporarily. committed to county jails because of overcrowded con-. ditions, etc.

We are, therefore, of opinion that neither the court below, nor the president judge of that court, had jurisdiction under the Act of June 19, 1911 and its amendments to parole William Harradine; that as stated in the formal transfer of said prisoner to the Erie County. prison:.

".......... he remains subject to the same term of imprisonment as that imposed upon him at the time of sentence under law, *and the jurisdiction over his release prior to the expiration of his maximum term is in the hands of the Western State Penitentiary.*" (Italics supplied).

As the action taken was without jurisdiction, it was void and could be questioned by the Commonwealth at any time: *Com. ex rel. Paige v. Smith,* 130 Pa. Superior Ct. 536, 546-547, 198 A. 812; *Com. ex rel. Lynch v. Ashe,* 320 Pa. 341, 344-346, 182 A. 229; *Kinsella v. Board of Trustees,* 340 Pa. 497, 500, 501, 17 A. 2d 882. Jurisdiction being wanting, we are not concerned with the reasons which led the court below to assume it. They will, no doubt, be given due consideration by the penitentiary authorities if and when the convict applies for a parole at the expiration of service of his minimum term, which was interrupted on August 8, 1941 by the order of parole.

The order paroling William Harradine is reversed and revoked, and it is ordered that he be returned to the Erie County prison.