## Commonwealth ex rel. O'Donnell v. Prasse

*George I. Puhak* and *Jacob M. Goodyear*, for petitioner.

*Clinton R. Weidner*, District Attorney of Cumberland County, *Louis G. Feldman*, District Attorney of Luzerne County, and *Frank P. Lawley, Jr.*, Assistant Deputy Attorney General, for Commonwealth.

SHEELY, P. J. (forty-first judicial district, specially presiding), October 30, 1952.—This is a petition for a writ of habeas corpus alleging that John David Johnson O'Donnell is "unjustly held and detained in custody by Arthur T. Prasse, Superintendent of the Pennsylvania Industrial School at Camp Hill" and that petitioner "was not committed for any criminal or supposed criminal matter." A rule was issued to show cause why a writ of habeas corpus should not issue, and answers were filed thereto by the Attorney General of the Commonwealth of Pennsylvania, the District Attorney of Cumberland County, and the District Attorney of Luzerne County.

The answers of the Attorney General and the District Attorney of Cumberland County challenge the jurisdiction of this court to review, on habeas corpus, the action of the Juvenile Court of Luzerne County which committed petitioner to the Pennsylvania Industrial School. It is contended that since section 2 of the Juvenile Court Act of June 2, 1933, P. L. 1433, 11 PS §244, provides that the juvenile court "shall have and possess full and exclusive jurisdiction in (a) all pro-

ceedings affecting delinquent, neglected and dependent children; . . . ," a court of common pleas cannot issue a writ of habeas corpus where a juvenile has been committed by the juvenile court.

It is undoubtedly true that the juvenile court has exclusive jurisdiction in the first instance in all proceedings affecting or concerning delinquent, neglected and dependent children, and that where the jurisdiction of the juvenile court has attached and the powers of the court been exercised, all matters concerning the welfare of the child are for that court. Jurisdiction to determine what is for the best interest of the child cannot be transferred to the court of common pleas under a habeas corpus proceedings: Ciammaichella Appeal, 169 Pa. Superior Ct. 240, 242 (1951) ; Commonwealth ex rel. v. Whitehill et ux., 67 D. & C. 148 (1948) ; Commonwealth ex rel. v. Briggs, etc., 68 Pitts. L. J. 141 (1919) ; Commonwealth of Penna. ex rel. v. Black et al., 68 Pitts. L. J. 755 (1920). Likewise, a petition for a writ of habeas corpus cannot be made a substitute for an appeal either in a criminal proceeding or in a juvenile proceeding: Commonwealth ex rel. McGlinn v. Smith, Warden, 344 Pa. 41, 47 (1952) ; Commonwealth ex rel. Schultz v. Smith, 139 Pa. Superior Ct. 357 (1939). But, as pointed out in the Schultz case, there are certain basic and fundamental errors in criminal proceedings which may be corrected on habeas corpus, such as an erroneous and illegal sentence; an excessive sentence; a lumping sentence; a double sentence for the same offense; a minor offense swallowed up in a greater; and a sentence increased after the term. To this list might be added other situations which are illustrated in the cases.

Was it the intention of the legislature, by providing that the juvenile court should have full and exclusive jurisdiction in all proceedings affecting delinquent,

neglected and dependent children, to take away from the court of common pleas of a county in which a juvenile might be detained, the power to inquire into the legality of such detention by a writ of habeas corpus? We do not think so. The right to a writ of habeas corpus is a most important right and is recognized in article I, sec. 14, of the Constitution of Pennsylvania. Consequently a person may not be wholly deprived of the right to the writ, or the right be so hampered as to amount to a practical deprivation: Commonwealth ex rel. Greevy v. Reifsteck, 271 Pa. 441, 445 (1921). What was intended by the quoted portion of the Juvenile Court Act was that all proceedings having to do with the determination of whether or not a juvenile is delinquent, dependent, or neglected, and the disposition to make of his case for the promotion of his welfare, are within the exclusive jurisdiction of the juvenile court. There is nothing in the act, however, to indicate that the time honored writ of habeas corpus could not be issued by the court of common pleas to determine the legality of the detention of a juvenile, under the usual rules applicable to a writ of habeas corpus.

The questions which may be considered on the writ of habeas corpus however, are limited. In Commonwealth ex rel. McGlinn v. Smith, Warden, 344 Pa. 41, 47 (1942), Mr. Chief Justice Maxey pointed out that there are certain long-established principles by which courts are guided. " 'The writ of habeas corpus can never be used as a substitute for an appeal'. . . . 'The regularity of proceedings is not to be attacked in this way'. . . . 'The writ of habeas corpus should be allowed only when the court or judge is satisfied that the "party hath probable cause to be delivered" '. . . . 'A judgment cannot be lightly set aside by collateral attack even on habeas corpus. When collaterally attacked, the

judgment of a court carries with it a presumption of regularity'. . . . The remedy of habeas corpus being an extraordinary one, it can be successfully invoked only in exceptional cases, where there is a 'peculiar and pressing need for it'."

In connection with the last principle the court quoted from Goto v. Lane et al., 265 U. S. 393, 401:

" 'The remedy is an extraordinary one, out of the usual course, and involves a collateral attack on the process or judgment constituting the basis of the detention. The instances in which it is granted, when the law had provided another remedy in regular course, are exceptional and usually confined to situations where there is peculiar and pressing need for it or where the process or judgment under which the prisoner is held is wholly void.' . . ."

Petitioner in the present case contends that there was no charge preferred against him; that there was no hearing at which any charge was preferred against him; that at the time he was brought to the juvenile court it was stated that he was not being committed to Kis-Lyn; and, there being no charge preferred as indicated by the Act of June 18, 1939, P. L. 394, par. 1, 11 PS §243, the whole proceedings resulting in the confinement of petitioner are illegal and void. If it were true that no petition had been filed as required by the Juvenile Court Act and that there had been no hearing thereon, the court would have been without jurisdiction to commit petitioner: Rose Child Dependency Case, 161 Pa. Superior Ct. 204 (1947). But the record shows that these allegations are incorrect. A petition was filed alleging that Jack Johnson, alias O'Donnell, a child under 18 years of age, was delinquent and in need of care and protection. It is true that the word "delinquent" was abbreviated to "del." and that the petition alleged that the child was "in need of the care

and protection of the court" instead of alleging, in the words of the statute that the child was "in need of care, guidance and control," but we regard these deviations as immaterial. The petition was sufficient to inform petitioner and anyone interested in his case that he was being brought into court as a delinquent. There is no requirement that the petition allege the evidence by which the allegation of delinquency was to be proved.

Petitioner refers to "charges" being "preferred" against petitioner as though this were a criminal case. This phraseology completely overlooks the basic concept of the juvenile court. As stated in Commonwealth v. Fisher, 213 Pa. 48, 50 (1905) : ". . . it is important that the powers of the court, in respect to the care, treatment and control of dependent, neglected, delinquent and incorrigible children should be clearly distinguished from those exercised by it in the administration of the criminal law. . . . The natural parent needs no process to temporarily deprive his child of its liberty by confining it in his own home, to save it and to shield it from the consequences of persistence in a career of waywardness, nor is the state, when compelled, as parens patriæ, to take the place of the father for the same purpose, required to adopt any process as a means of placing its hands upon the child to lead it into one of its courts. When the child gets there and the court, with the power to save it, determines on its salvation, and not its punishment, it is immaterial how it got there. The act simply provides how children who ought to be saved may reach the court to be saved . . . the act is not for the trial of a child charged with a crime, but is mercifully to save it from such an ordeal. . . . The court passes upon nothing but the propriety of an effort to save it; and if a worthy subject for an effort of salvation, that effort is made in the way directed by the act." See also: Commonwealth v. Carnes,

82 Pa. Superior Ct. 335 (1923). It follows that the technicalities which must be observed in criminal proceedings do not apply in juvenile cases.

The charge that no hearing was held is completely contradicted by the record. The order entered by Judge Valentine recites that "the court, after hearing, finds and adjudges that John David O'Donnell, who is a minor child, born February 16, 1936, is a delinquent child, and, being of opinion that the welfare of said child, and the interests of the State require that he be placed in a suitable institution for training, does order and direct. . . ." This finding complies with the requirements of the Juvenile Court Act and cannot be contradicted.

"If the record in the . . . (trial court) was incomplete or incorrect, amendment or corrections should have been sought by appropriate proceedings rather than by attempted impeachment on habeas corpus. We think relator is in no position to allege anything in contradiction of the record. The conduct of the trial is not to be attacked in this way. See Commonwealth ex rel. Ross v. Egan, 281 Pa. 251, 253, 126 A. 488": Commonwealth ex rel. Kaylor v. Ashe, 167 Pa. Superior Ct. 263, 267 (1950).

In his brief petitioner refers to the fact that the petition alleged that the person having control of the child is "sister or mother", without naming such person as required by section 4 of the Juvenile Court Act. However, the brief also admits that Jetta O'Donnell, the person by whom the present petition was filed alleging that she was the foster mother, prochein ami, and guardian of the juvenile, was present in the juvenile court when action was taken in connection with his case. The purpose of requiring the name of the parent or guardian to be set forth in the petition is that notice might be given to such person to enable him to be present at any hearing. Where the person to whom notice

would be given has actual notice thereof and does appear the purpose of the requirement is fulfilled.

The petitioner also argues "that the 'lock-up' type of State industrial school was not the solution offered by the legislature for the rehabilitating or reform of citizens of tender years like Jack O'Donnell." If, by this argument petitioner contends that the Juvenile Court of Luzerne County erred in its judgment determining what treatment was required in this case, the answer is that that question could be raised only by appeal and not by habeas corpus. The only question which we can consider is whether the court had legal authority to commit this juvenile to the Pennsylvania Industrial School at White Hill.

Among the courses open to a court after it has found that a child is delinquent and that his best interest and welfare and those of the State require his care, guidance and control, are those provided in section 8 of the Juvenile Court Act (11 PS §250). Subsection (d) provides that the court may "commit a child to an industrial or training school, or county institution or school maintained for such purpose, willing to receive it, for care, guidance and control." The Pennsylvania Industrial School is an industrial school maintained by the Commonwealth for the purpose of care, guidance and control of persons under the age of 21 years, and since that school was willing to receive this juvenile, the commitment would be authorized under this subsection of the statute.

Petitioner contends, however, that subsection (e) of section 8 of the Juvenile Court Act controls and prohibits the commitment of a child under the age of 16 years to a State industrial school. (The juvenile in this case was committed eight days before his sixteenth birthday.) This subsection was added to the act by the amendment of June 15, 1939, P. L. 394, which increased the age limit of children within the jurisdiction

of the juvenile court from 16 years to 18 years, and must be construed as being intended to provide for a situation different from that provided for by subsection (d). No change was made in connection with commitments of children under the age of 16 years: Trignani's Case, 148 Pa. Superior Ct. 142 (1942). Under subsection (d) the juvenile court has authority to commit a child under the age of 16 years to an industrial school which was willing to receive it. The amendment of 1939 increased the age limit of the jurisdiction of the juvenile court to 18 years, and the court then had authority, under subsection (d), to commit a child under the age of 18 years to an industrial school which was willing to receive it. The statute placed no limitation whatever upon the type of industrial school to which the child could be committed, whether it be a State industrial school, a county industrial school, or a private industrial school. The only limitation was that the school should be willing to receive it. Subsection (e) eliminated the provision that the school be willing to receive the child in the case of commitments of a child over the age of 16 years to a State industrial school or a home for the reformation and correction of youths above the age of 16 and thereby made it mandatory for such schools to receive children between the ages of 16 years and 18 years upon commitment from the juvenile court.

Were it not for subsection (e) a juvenile court could not commit a child over 16 years and under 18 years of age to a State industrial school unless the school were willing to accept it. The only alternative would be to transfer the case to the court of quarter sessions where a commitment to the State industrial school could be made under the provisions of the Act of April 28, 1887, P. L. 63, as amended by the Act of June 30, 1951, P. L. 974, 61 PS §483, which provides that "any court in this Commonwealth, exercising criminal juris-

diction," may "sentence to the said school any male criminal, between the ages of fifteen and twenty-one years. . . ." This act can apply only to courts of quarter sessions or oyer and terminer and not to juvenile courts since the latter courts do not exercise criminal jurisdiction and do not sentence male criminals. A person sentenced under this statute is sentenced as a criminal to an indeterminate sentence, the maximum of which would be the maximum sentence which could have been imposed for the crime of which he stood convicted. It was to enable the juvenile court to make it possible for a child under 18 years of age to receive the benefits of the training at the Pennsylvania Industrial School without incurring a criminal record and without incurring the risk of being committed for the maximum term provided for the act which he committed that subsection (e) was added to section 8 of the Juvenile Court Act. There is nothing in this subsection, or in the Juvenile Court of Act itself, to indicate any intention on the part of the legislature that a child under the age of 16 years should not be committed to a State industrial school willing to receive it.

The commitment of petitioner to the Pennsylvania Industrial School was within the authority of the Juvenile Court of Luzerne County, and his petition for a writ of habeas corpus must be refused. Petitioner still has the rights accorded to him under the Juvenile Court Act. Section 16 of that act (11 PS §258) provides for the right of the child, by his parent or next friend, to file a petition in the juvenile court asking for the revocation or modification of an order and also provides for an appeal to the Superior Court from a refusal of the petition. This section of the act provides petitioner with a full remedy.

And now, October 30, 1952, the petition for a writ of habeas corpus is dismissed at the cost of petitioner.