Weiner Appeal.

Argued March 22, 1954. Before HIRT, ROSS, GUN-
THER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES,
P. J., absent).

*Abraham Weiner*, appellant, in propria persona,
submitted a brief.

*Samuel Dash*, Assistant District Attorney, with
him *Michael von Moschzisker*, First Assistant District
Attorney and *Richardson Dilworth*, District Attorney,
for appellee.

OPINION BY HIRT, J., July 13, 1954:

On July 18, 1952 Aaron Weiner a thirteen-year old
boy and his companion, John Spence, also known as
John Wapner, were brought into the Juvenile Court
on charges of delinquency. Nine burglaries had been
committed within a period of two weeks; Aaron Weiner
admitted that he had participated with Spence in seven
of them. At the first hearing on August 8, 1952, the
hearing judge stressed the importance of restitution
to those whose property had been taken in Cheltenham
Township, Montgomery County. At the suggestion of
the court Abraham Weiner the father of one of the
boys retired from the hearing room and discussed set-
tlement with those present whose homes had been en-
tered. But because witnesses as to two or three bur-

glaries in Philadelphia County did not appear, the hearing judge stated: ". . . I will defer sentence until we can hear them. With respect to both boys, as to damage they did, I will take into consideration what adjustment is made with the prosecution, the people whose homes were burglarized. I will defer sentence, and both boys are to be held." An officer of the court reported that Aaron Weiner's father had deposited $185 with the "restitution department" of the court for the adjustment of the Cheltenham losses and the case was then continued to August 29, 1952 by the court; "Both defendants to be held in the House of Detention." At the hearing on August 29, 1952, the court stated to Abraham Weiner: ". . . you were here before and we told you to make some adjustment with the people whose homes were ransacked in Cheltenham" and referring to burglaries committed in Philadelphia the court said to the father of the boy: "I am placing Aaron on strict probation, restitution in the amount of $585 to be made before Aaron Weiner is released. Otherwise he will stand committed." The court indicated that Abraham Weiner was to pay that amount. And when he deposited $270 the court gave him until September 15, 1952 to pay the balance, and placed Aaron on probation in the custody of his father, apparently subject to some supervision by the Big Brother Association. The Spence boy was committed to Hawthorne Knolls School.

On November 17, 1952 Abraham Weiner again appeared in the Juvenile Court pursuant to notice. The hearing was addressed solely to the question of further payments by him. He had disregarded a recent demand of a Mr. Blank to pay him $62.50, the value of property taken from his house by the boys. Abraham Weiner stated to the court that he needed six months to pay off the loan by which he raised the $585 pre-

viously paid. And when he questioned his liability to pay the total amount of the losses, since there were two boys involved, the lower court found him guilty of contempt "for lack of cooperation." He was committed to the county prison but was released later when the court stated: "I will release him from the County Prison on the charge of contempt, but the restitution is to be paid, and probation is continued as to the boy."

Abraham Weiner again appeared in the lower court on November 24, 1952. He was summoned because he had failed to make restitution in still another case for property taken from owners in Elkins Park. The court again stressed the importance of restitution and said: "It is up to you to adjust this, with reference to this claim in Elkins Park."

All of the offenses were statutory burglaries committed in the daytime. The boys rode about on their bicycles and broke into houses which appeared to have been closed for some time. They stole a long list of articles—fishing tackle, guns and cameras and the like and committed serious acts of vandalism in some instances. The Weiner boy undoubtedly was led astray by his associate who had prior experience in similar delinquencies. Aaron had never been in trouble before and there is no suggestion that he has misbehaved since he was returned to his family. The orders of the court committing the Spence boy to an institution and returning Aaron Weiner on probation to his family concededly were appropriate and these orders are not questioned here.

The direction of the court on August 29, 1952 that Abraham Weiner make restitution in the sum of $585 amounted to an order of the court. This appeal is by Abraham Weiner from that order. He was not represented by counsel below and his numerous petitions

subsequently filed were inartistically drawn. But in effect he complained of the restitution payments he was compelled to make and he sought a rehearing on the question of his liability. The court on December 30, 1953 denied a rehearing. The opinion of the court filed on February 11, 1954 assigns the failure of this appellant to comply with §15 of The Juvenile Court Law of June 2, 1933, P. L. 1433, 11 PS §257, in justification of the order. That section of the Act requires a petition for a rehearing within 21 days from an order "committing or placing any . . . delinquent child." On such petition the court is bound to grant a rehearing as a matter of right and an appeal lies only from the final order of the court after rehearing. Abraham Weiner's petitions apparently were not filed within 21 days from the date of the restitution order of August 29, 1952. But section 15 of The Juvenile Court Law has no application to this appellant. His appeal is before us for review, not as an appeal under the above 1933 Act, but as on certiorari questioning the jurisdiction of the court and the regularity of the proceedings in the restitution order imposed upon him by the lower court. Cf. *Carroll's Appeal*, 336 Pa. 257, 9 A. 2d 407.

In *Trignani's Case*, 148 Pa. Superior Ct. 142, 24 A. 2d 743, we suggested that the function of a juvenile court is not to enforce satisfaction of civil damages, but "that evil tendencies may be checked" by means of "such care, guidance and control as are essential to children in the formative period of life" quoting from the preamble of the Act. 11 PS §243. And in that case we recognized the power of the court to impose terms in placing a child on probation. But we held that the terms imposed in requiring restitution *by the juvenile,* must be wholly in the interest of the child, looking toward his reformation and not to make

good the damages flowing from his illegal acts. Undoubtedly restitution by the parents of a delinquent child in some instances may be indicated to impress upon them their responsibility in the reformation of the child. But there is nothing in The Juvenile Court Law which authorizes the court to compel the parents to make restitution satisfying the civil demands of the victims of the child's delinquency and the juvenile court has no power by attachment to enforce such orders when made. The Municipal Court sitting as a juvenile court has only such jurisdiction as is given it by statute, and compelling restitution by the child's parents is not one of them.

Moreover, in general, there is no common law liability on a parent of a delinquent child to make restitution. The rule is thus stated in *Condel et al. v. Savo et ux.*, 350 Pa. 350, 39 A. 2d 51: "At common law the mere relation of parent and child imposes upon the parent no liability for the torts of the child, but the parents may be liable where the act of the child is done as the agent of the parents or where the negligence of the parents makes the injury possible. The injury committed by the child must have been the natural and probable consequence of the parents' negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such negligent act." Cf. *Mendola et al. v. Sambol*, 166 Pa. Superior Ct. 351, 71 A. 2d 827. Abraham Weiner the present appellant is in no sense chargeable with resonsibility for his son's delinquencies and there is no common law liability for restitution on him.

The order of December 30, 1953 denying a rehearing did not extend the time of appeal; it had no bearing on that question. The appeal from the order of August 29, 1952 was properly taken, almost five months

later, on January 11, 1954, since the court in making the order acted without authority. A final order entered by a court without jurisdiction may be questioned on appeal at any time. *Commonwealth v. Harradine,* 148 Pa. Superior Ct. 451, 457, 25 A. 2d 576.

The reversal in this case may be an empty victory for appellant since he complied with the order by making restitution as a condition to regaining custody of his child. But he nevertheless is entitled to be heard in the lower court and to such redress as is possible under the circumstances.

Order reversed.

DISSENTING OPINION BY GUNTHER, J.:

Appellant was adjudged a delinquent by the Juvenile Division of the Municipal Court of Philadelphia. Two hearings were held, the second on August 29, 1952. The testimony established that the appellant committed a series of burglaries, most of which he admitted. He was placed on probation in the custody of a Jewish agency for placement in a home, after appellant's father had agreed to make restitution to the victims of the burglaries. The father subsequently asked for a rehearing and for return of the money paid as restitution. He now appeals from the refusal, by the court below, of his petition for rehearing and from the order entered.

Appellant contends that the evidence is insufficient to establish that he committed the various burglaries for which he was charged and finally, that the values placed on the property stolen were greatly exaggerated. Examination of the record reveals more than sufficient competent evidence to sustain the findings and the decision of the court below. The appellant admitted his participation in most of the crimes. Two hearings

were held, which afforded sufficient opportunity to elicit any testimony establishing appellant's innocence.

It is also contended that it was improper for the court to order restitution. It is clear from the record that the primary concern of the court was the welfare of the child. Restitution may be an entirely proper adjunct to an order regarding a delinquent, although it has been held improper in some instances. See *Trignani's Case,* 148 Pa. Superior Ct. 142, 24 A. 2d 743. Here, however, it is clear that the appellant and his father had the financial means to make restitution which the court ordered to be paid in a lump sum by a specified time. No burden was placed on the juvenile which might prove beyond his capabilities to perform. The main complaint, in truth, seems to be that the victims allegedly exaggerated their losses and were overpaid thereby. Had appellant's father wished to pursue the testimony in regard thereto he could have petitioned, as a matter of right, for a rehearing within twenty-one days of the final order of the court below. Having failed to do so, he must stand on the record, which, I find, is sufficient to sustain the action of the court below.