


FILED

Jun 18 2024, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-JV-344

## B.K. and S.K.,
*Appellants (Respondents below)*

–v–

## State of Indiana,
*Appellee (Petitioner below)*

---

Argued: January 11, 2024 | Decided: June 18, 2024

Appeal from the Hendricks Superior Court
Nos. 32D03-2206-JD-104, 32D03-2207-JD-108
The Honorable Heather M. Mollo, Judge Pro Tempore

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-JV-2921

---

**Opinion by Justice Goff**

Chief Justice Rush and Justice Molter concur.
Justice Slaughter concurs in part and dissents in part with separate opinion in which Justice Massa joins.

**Goff, Justice.**

Juvenile courts enjoy significant discretion in crafting an appropriate disposition for juveniles found delinquent. Among other options, a juvenile court may order the child to pay restitution to the victim. While often an effective means of ensuring accountability and furthering the rehabilitative goals of our juvenile-justice system, a restitution order must still comply with the statutory parameters set by the legislature.

Here, the juvenile court issued a restitution order for $28,750, enforceable as a civil-judgment lien, holding the juveniles jointly and severally responsible for payment in full. With no such judgment-lien provision in the juvenile restitution statute, we hold that the juvenile court lacked the authority to enforce its order in such a manner. We thus reverse the court's decision and remand for reconsideration of the restitution order in light of our holding.

# Facts and Procedural History

In the summer of 2022, two cousins visiting from Illinois, 17-year-old B.K. and 15-year-old S.K. (or the Juveniles), threw stolen fireworks into a Costco trash bin, starting a fire that resulted in property damage. The Juveniles each ultimately admitted to one delinquent act of criminal mischief while the State dismissed its allegations of theft. The State did not request probation, citing the Juveniles' out-of-state residency and acknowledging that neither of them posed a risk of drug use. But Costco sought restitution for roughly $25,000—an amount initially considered by the State as "very unreasonable." Tr. Vol. 2, p. 20.

At a subsequent restitution hearing, a Costco representative testified to a total loss of $28,750. *Id.* at 33. The court then directed defense counsel and the State to conduct an ability-to-pay inquiry. *Id.* at 36–37.

B.K., a high-school senior at the time, testified to playing baseball and to earning about $160 a week at a part-time job—money he either saved or spent on things like gas and sports equipment. *Id.* at 37–38. He further testified that he had about $250 in his bank account, that his balance may

occasionally exceed $1,000 when he works extra hours, and that he planned to take courses on "fire science" after high school (the cost of which he and his parents would pay). *Id.* at 39. S.K., for his part, testified that he attended school, participated in academic extracurriculars, practiced sports every day, and worked as a referee when needed (once or twice a week), earning $20 a game. *Id.* at 40–41. S.K. further testified that he had a savings account with an approximate and "typical" balance of $78. *Id.* at 41–42. When asked whether they had the "ability to pay" the full restitution amount, both Juveniles answered "no."[1] *Id.* at 39, 42.

After hearing testimony from the parents on their financial circumstances, the court took the matter under advisement while informing the Juveniles that they and their "families" should expect to "contribut[e] something toward restitution." *Id.* at 49.

A few weeks later, the court issued dispositional decrees, ordering payment of restitution in full, "jointly and severally." App. Vol. 2, pp. 50–51, 100–01. In its decrees, the court found no need to conduct an ability-to-pay inquiry since neither Juvenile was subject to restitution "as a condition of probation." *Id.* (citing *M.L. v State*, 838 N.E.2d 525 (Ind. Ct. App. 2005)). But the court emphasized that it had conducted such an inquiry and found that both Juveniles could pay the restitution amount. *Id.* at 51, 101. The court specifically referenced B.K.'s ability to work "extra hours," his checking account balance of $250, and his "approximately $1,000.00 in savings." *Id.* at 101. And S.K., the court determined, was "of an age to be more gainfully employed," with "ample time to at least be employed part-time." *Id.* at 51. The court expressly declined to consider the "parents' income or earnings," concluding that it's "the juvenile's ability to pay," not the parents', "that is relevant." *Id.* at 51, 101 (citing *T.C. v State*, 839 N.E.2d 1222 (Ind. Ct. App. 2005)).

In separate restitution orders accompanying the dispositional decrees, the court directed B.K. to pay $250 a month and S.K. to pay $125 a month.

---

[1] In posing this question to B.K. specifically, defense counsel referred to the amount owed to Costco as "over $20,000." Tr. Vol. 2, p. 39.

*Id.* at 53, 103. Restitution, the orders specified, was a "judgement lien" which "attaches to the property of the Defendant[s]," "may be perfected" and "enforced by th[e] victim," and "expires in the same manner as a judgment lien created in a civil proceeding." *Id.*

The Court of Appeals affirmed in a memorandum decision, holding that the restitution orders amount to enforceable judgment liens. *B.K. v. State*, No. 22A-JV-2921, 2023 WL 4283664, at *2 (Ind. Ct. App. June 30, 2023). The panel acknowledged that the governing statute "does not expressly state that the restitution order is a judgment lien" or that "the juvenile court may enter the restitution order as a civil judgment." *Id.* (citing Ind. Code § 31-37-19-5(b)(4)). But the court found instructive the criminal restitution statute, which expressly **does** consider a restitution order as a judgment lien. *Id.* (citing I.C. § 35-50-5-3). And because a "'juvenile restitution order results from an act that would be a crime if committed by an adult,'" the panel explained, "'it is equivalent to an adult restitution order.'" *Id.* (quoting *M.M. v. State*, 31 N.E.3d 516, 521 (Ind. Ct. App. 2015)). Finally, "even if" an ability-to-pay inquiry "were required," the panel found no abuse of discretion in the court's determination that the Juveniles could pay the restitution amount. *Id.*

The Juveniles petitioned for transfer, which we granted, vacating the Court of Appeals' decision. *See* Ind. Appellate Rule 58(A).

## Standards of Review

An abuse-of-discretion standard of review applies to a juvenile court's order of restitution. *M.L.*, 838 N.E.2d at 528. A juvenile court abuses its discretion when its "determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* Questions of statutory interpretation are subject to de novo review. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010).

# Discussion and Decision

Juvenile courts enjoy wide latitude and significant flexibility in their dealings with juveniles. *In re M.T.*, 928 N.E.2d 266, 268 (Ind. Ct. App. 2010). Among other options, a juvenile court may "[o]rder the child to pay restitution if the victim provides reasonable evidence of the victim's loss." I.C. § 31-37-19-5(b)(4) (the Juvenile Restitution Statute or just Statute). The purpose of this dispositional alternative is "to impress upon a juvenile delinquent the magnitude of the loss he has caused and to defray costs to the victim caused by the delinquent act." *M.M.*, 31 N.E.3d at 519 (internal citation and quotation marks omitted).

Here, the Juveniles argue that the court lacked authority to order the payment of restitution as a civil judgment. We agree.[2]

## The Juvenile Court lacked the authority to order the restitution payment as a civil judgment.

The parties dispute whether the juvenile court had the authority to order the payment of restitution as a civil judgment. In arguing that it did not, B.K. and S.K. distinguish the Juvenile Restitution Statute from the criminal restitution statute. Pet. to Trans. at 6–7. Whereas the latter expressly defines a restitution order as a "judgment lien," the former says nothing of the sort. *Compare* I.C. § 35-50-5-3(b) *with* I.C. § 31-37-19-5(b)(4). The Juveniles also rely on *J.B. v. State*, in which the Court of Appeals held that, with "no judgment lien provision in the juvenile statute," the juvenile court lacked the authority to order payment of restitution as a civil judgment. 55 N.E.3d 831, 834 (Ind. Ct. App. 2016).

For its part, the State contends that *J.B.* was wrongly decided. Appellee's Br. at 9. If a juvenile court lacks the authority to order

---

[2] Juveniles also challenged the amount of restitution as an abuse of discretion. Appellants' Br. at 11–12; Pet. to Trans. at 9. Because our holding requires the court to reconsider the restitution orders on remand, we need not address this challenge.

restitution as a civil judgment, the State submits, "then the restitution order could only be imposed as a condition of probation." *Id.* And if the court imposes no such condition, the State adds, then no restitution order could be entered against a juvenile at all, rendering the Statute effectively meaningless. *Id.*; Opp. to Trans. at 8, 11. In any case, the State points out, the Court of Appeals "has repeatedly stated that the adult restitution statute is instructive for restitution in juvenile delinquency cases." Opp. to Trans. at 11 n.2 (citing *M.M.*, 31 N.E.3d at 520).

We agree with the Juveniles and expressly approve the Court of Appeals' holding in *J.B. v. State*. To the extent it conflicts with that holding, we expressly disapprove the conclusion in *M.M.* that the criminal restitution statute applies to a delinquent act.

## A. Restitution is a penal sanction limited to the statutory parameters set by the legislature.

Indiana courts have consistently treated restitution as a criminal sanction—one of several "penal tools" that forms "an integral part of the actual aggregate penalty faced by a defendant" and which is "properly considered as part of the sentence." *Sharp v. State*, 970 N.E.2d 647, 650 (Ind. 2012); *see also Wininger v. Purdue Univ.*, 666 N.E.2d 455, 457 (Ind. Ct. App. 1996) (characterizing the "[i]mposition of a restitution order" as a "form of punishment"). And "[b]ecause restitution is penal in nature, the statute providing for restitution **must be strictly construed** against the State to avoid enlarging it beyond the fair meaning of the language used." *Morgan v. State*, 49 N.E.3d 1091, 1094 (Ind. Ct. App. 2016) (emphasis added).

In *Roach v. State*, for example, this Court considered whether the trial court possessed the statutory authority to order the defendant's payment of the victim's funeral and burial expenses as restitution. 711 N.E.2d 1237, 1237 (Ind. 1999). At the time, the criminal restitution statute authorized the trial court to base its restitution order on three types of damages: property damage, medical and hospital costs, and lost earnings. *Id.* at 1237–38 (citing statute). "A trial court's sentencing authority is limited to the statutory parameters prescribed by the General Assembly," the Court

explained. *Id.* at 1238. And under the statute's "plain" terms, the Court held that "the trial court did not possess the statutory authority" to order payment of "restitution for funeral and burial expenses."[3]  *Id.*

The question here, of course, involves a restitution order in the context of a juvenile-delinquency proceeding. And Indiana courts treat these proceedings as either "civil" or "quasi-criminal" in nature. *M.H. v. State*, 207 N.E.3d 412, 419 (Ind. 2023). The language of the Juvenile Restitution Statute, however, clearly characterizes restitution as a penal sanction.

First, while the Statute calls for the court to consider "evidence of the victim's loss" (suggesting a civil, compensatory function), the imposition of restitution is discretionary—the "juvenile court **may**" order the child to pay restitution if the victim provides reasonable evidence of his or her loss. I.C. § 31-37-19-5(b)(4) (emphasis added). And this discretion includes "the amount of restitution," which may be less than the amount of damages actually sustained by the victim. *M.L.*, 838 N.E.2d at 530. Indeed, while a restitution order aims in part "to defray costs to the victim caused by the delinquent act," its overarching purpose is penal—a measure designed to "impress upon a juvenile delinquent the magnitude of the loss he has caused." *M.M.*, 31 N.E.3d at 519 (internal citation and quotation marks omitted).

Second, the Statute directs a court to impose restitution as part of the disposition itself—that is, "**in addition to** an order" committing the child to a detention facility, returning the child to the custody of a parent, or placing the child in another home or shelter-care facility. I.C. § 31-37-19-5(b) (citing I.C. § 31-37-19-6) (emphasis added). And this language tracks

---

[3] Indiana courts have been consistent in this strict-construction approach, holding that the criminal restitution statute did not authorize the trial court to order the defendant's payment of the victim's expenses for public transportation and pain and suffering, the victim's cost of performing an audit, the cost of the victim's father's plane ticket to return home, the investigative expenses incurred by an insurance company, and the cost of the victim's new home-security system. *See, respectively*, *Person v. State*, 93 N.E.3d 1126, 1127 (Ind. Ct. App. 2018); *Morgan v. State*, 49 N.E.3d 1091, 1094 (Ind. Ct. App. 2016); *Springer v. State*, 798 N.E.2d 431, 436 (Ind. 2003); *Henderson v. State*, 848 N.E.2d 341, 346 (Ind. Ct. App. 2006); *Rich v. State*, 890 N.E.2d 44, 53 (Ind. Ct. App. 2008).

the wording of the criminal restitution statute, further illustrating the Statute's penal design. *See* I.C. § 35-50-5-3(a) (allowing for imposition of restitution "**in addition to** any sentence imposed . . . for a felony or misdemeanor") (emphasis added).

Because it imposes a penal sanction, the Juvenile Restitution Statute "must be strictly construed against the State to avoid enlarging it beyond the fair meaning of the language used." *See Morgan*, 49 N.E.3d at 1094.

Decisions from courts in other states support this strict-construction approach to restitution in the juvenile context. *See, e.g., TPJ v. State*, 66 P.3d 710, 716 (Wyo. 2003) (holding that the juvenile court abused its discretion by ordering restitution for certain expenses not expressly contemplated by the statute); *In re M.W.*, 725 A.2d 729, 731–32 (Pa. 1999) (emphasizing that an "order of restitution must be based upon statutory authority"). As this case law relates to the issue before us, we find especially pertinent the decision in *R.I. v. State*, where the Alaska Court of Appeals (like the Indiana Court of Appeals in *J.B.*) held that, absent an express statutory provision, the juvenile "court lacked the authority to convert the restitution portion of its dispositional order into a civil judgement." 894 P.2d 683, 686 (Alaska Ct. App. 1995).[4]

Some states expressly recognize a juvenile restitution order as "a judgment and lien against all property of the individual ordered to pay restitution for the amount specified in the order of restitution." Mich. Comp. Laws Ann. § 712A.30(13). *See also* Ariz. Rev. Stat. Ann. § 8-344(F) (expressly providing that a "juvenile restitution order may be recorded and enforced as any civil judgment"); Cal. Welf. & Inst. Code § 730.6(i) (mandating enforcement of a juvenile restitution order "as a civil judgment"); Miss. Code Ann. § 43-21-619(3) (classifying a juvenile restitution order as a "civil judgment" that "may be enforced in any

---

[4] Similarly, in *In re Weiner*, the Superior Court of Pennsylvania held that, absent an express statutory provision, a juvenile court lacked the authority to compel restitution by a child's parents and had "no power by attachment to enforce such orders when made." 106 A.2d 915, 918 (Pa. 1954).

manner provided by law for civil judgments"). Courts in these states have upheld the "express intent of the Legislature to permit victims to enforce juvenile restitution orders in the same manner as civil judgments." *In re J.V.*, 180 Cal. Rptr. 3d 711, 714 (Cal. Ct. App. 2014).

Indiana's Juvenile Restitution Statute, by contrast, contains no such language. And, for the reasons above, "we decline to read into the juvenile code a provision not explicitly stated." *See J.B.*, 55 N.E.3d at 834.

## B. Reading a judgment-lien provision into the Statute runs counter to the rehabilitative goals of our juvenile code.

In further support of our decision, we emphasize that Indiana courts must construe the juvenile code liberally to "'ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation.'" *In re K.G.*, 808 N.E.2d 631, 637 (Ind. 2004) (quoting I.C. § 31–10–2–1(5)). What's more, an order of restitution, as with any dispositional decree, must impose the "least restraint on the freedom of the child" and his or her parents, at least when "consistent with the safety of the community and the best interest of the child." *See* I.C. § 31-37-18-6.

Reading a judgment-lien provision into the Juvenile Restitution Statute runs counter to these statutory directives. *Cf. K.G.*, 808 N.E.2d at 637–38 (declining to apply the adult competency statute to juveniles in light of "the history and purpose underlying the juvenile code" and to avoid compromising the "discretion and flexibility" courts enjoy when acting in the child's best interest). Indeed, a large economic sanction may burden juveniles well into adulthood, hindering their education and their employment opportunities and rendering them especially vulnerable to recidivism. Jessica Feierman et al., Juvenile Law Ctr., Debtors' Prison for Kids? The High Cost of Fines and Fees in the Juvenile Justice System 23 (2016); Beth A. Colgan, *Economic Liberty and Criminal Justice*, 43 Harv. J.L. & Pub. Pol'y 31, 37 (2020). A credit report reflecting a civil judgment, for example, may prevent them from securing a college loan. And this burden, in turn, may render a young adult ineligible for certain scholarships in higher education. *See* I.C. § 21-12-6-6(a)(5)(D) (requiring

students seeking a scholarship from the Twenty-First Century Scholars Program to certify that he or she applied for other types of financial assistance from the state or federal government). In cases involving large restitution orders, juvenile offenders may simply "abandon hopes of pursuing further education to instead work full-time, attempting to pay their debts." Justin Gendler, Note, *Crime Doesn't Pay but Neither Can Ex-Offenders: A Comparative Analysis of Criminal Restitution in the United States and Canada*, 5 Cardozo Int'l & Comp. L. Rev. 849, 863–64 (2022).

Here, B.K. testified to his plans on attending college and studying to become a fireman. S.K., fifteen years old at the time of the offense, presumably had yet to decide on his post-high-school plans. But his involvement in sports and academic extracurriculars while working on occasion arguably prepared him for the rigors of higher education. The collateral consequences of enforcing the restitution order as a judgment lien threaten to upend these opportunities.

## Conclusion

For the reasons above, we hold that the juvenile court lacked the authority to enforce restitution as a civil judgment. We thus reverse the court's decision and remand for reconsideration of restitution in light of our holding. Specifically, the court may either discharge the Juveniles or exercise continuing jurisdiction until the Juveniles reach twenty-one years of age. *See* I.C. § 31-30-2-1(a). If it elects the latter option, the court should consider reassessing the amount each Juvenile can realistically pay within the remaining period of judicial supervision. The court may also choose to place the Juveniles on probation and transfer supervision to authorities in their home state of Illinois. *See* I.C. § 31-37-23-1, arts. 3, 7.

Rush, C.J., and Molter, J., concur.
Slaughter, J., concurs in part and dissents in part with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT
Audrey Lunsford
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Theodore E. Rokita
Attorney General of Indiana

Megan M. Smith
Robert M. Yoke
Deputy Attorneys General
Indianapolis, Indiana

**Slaughter, J., concurring in part and dissenting in part.**

I agree that the juvenile court erred in reducing its restitution orders against B.K. and S.K. to an enforceable civil judgment. If the Court's decree were confined to reversing the judgment below on that narrow ground, I would join its opinion in full. Unfortunately, the majority's decree goes further. It remands the case to the juvenile court with instructions to reconsider the underlying restitution orders themselves, not just the unlawful civil judgment premised on those orders. And the Court does so based on its gratuitous (and erroneous) suggestion that the restitution orders below amount to an unlawful penal sanction against the two juveniles.

The Court's suggestion is gratuitous because the supposedly punitive "nature" of a juvenile-restitution order, *ante,* at 6, has nothing to do with the discrete issue of statutory interpretation before us: whether we should import into the Juvenile Restitution Statute, Ind. Code § 31-37-19-5(b)(4), a judgment-lien provision that exists only in the Criminal Restitution Statute, *id*. § 35-50-5-3(b). The Court rightly holds we should not. I would stop there and not inject extraneous dicta unnecessary to our disposition. We construe a true penal statute against the State only if the statute is ambiguous. *Fix v. State,* 186 N.E.3d 1134, 1139 (Ind. 2022). Otherwise, "we avoid judicial construction by interpreting its words in their plain and ordinary meaning", *ibid.,* "heeding both what it does say and what it does not say", *Mi.D. v. State*, 57 N.E.3d 809, 812 (Ind. 2016) (internal quotation marks omitted). Nothing in the Juvenile Restitution Statute gives a juvenile court authority to reduce a restitution order to an enforceable civil judgment. I.C. § 31-37-19-5(b)(4). This textual omission resolves the statute's meaning. We should begin and end our interpretive analysis there and avoid a needless excursion into the statute's nature.

The Court's suggestion also is erroneous. *Ante,* at 6. A restitution award under the Juvenile Restitution Statute is not penal. Juvenile cases "are, after all, civil proceedings." *J.W. v. State*, 113 N.E.3d 1202, 1206 (Ind. 2019) (citing *Bible v. State*, 254 N.E.2d 319, 322 (Ind. 1970)). Our Court recognizes that civil statutes exacting money from defendants are not necessarily penal; they serve "remedial" functions, too. *State v. Timbs*, 134 N.E.3d 12,

24 (Ind. 2019). It may be "punitive in nature" to impose a financial sanction "in excess of actual loss", *WellPoint, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 N.E.3d 716, 727 (Ind. 2015), but a sanction that merely "compensat[es] a victim for his loss" is remedial, *Kokesh v. S.E.C.*, 581 U.S. 455, 462 (2017). By permitting restitution in juvenile cases "if the victim provides reasonable evidence of the victim's loss", I.C. § 31-37-19-5(b)(4), the legislature is authorizing a remedial sanction to restore a victim of juvenile delinquency to its prior status.

Even in criminal cases, "[t]he primary goal of restitution is remedial or compensatory". *Paroline v. United States*, 572 U.S. 434, 456 (2014). Though we have passingly described restitution as a "penalt[y]" in the criminal context, *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010), the label is a poor fit here. The juvenile court ordered restitution in the precise amount of the loss Costco sustained due to the juveniles' delinquent acts. Thus, the disputed restitution orders are not punishing these juveniles but making their victim whole.

\*   \*   \*

For these reasons, I respectfully concur in part and dissent in part. Unlike the Court, I would reverse only the part of the juvenile court's judgment that reduces its restitution orders to an enforceable civil judgment. And I would affirm the restitution orders themselves.

Massa, J., joins.