*State,* 829 N.E.2d at 927 (noting that existence of a single aggravator "does not relieve trial or appellate judges from the obligation to consider what weight to assign a particular aggravator and to balance the aggravators and mitigators."). In this case, examining the properly found aggravator regarding Burks's criminal history against the court's conclusion that no mitigating circumstances existed, a fact not challenged by Burks on appeal, we are able to say with confidence that the enhanced sentence should be affirmed on appeal.[11]

Affirmed.

SULLIVAN, J., and VAIDIK, J., concur.

**M.L., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0504–JV–202.**

Court of Appeals of Indiana.

Dec. 7, 2005.

Rehearing Denied Jan. 31, 2006.

---

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

M.L. appeals the juvenile court's restitution order, arguing that the court denied him due process of law by failing to inquire into his ability to pay before ordering restitution as a condition of his probation. Finding that the court was required to make such an inquiry and that it failed to do so, we vacate the restitution order and remand with instructions for the court to inquire into M.L.'s ability to pay.

### Facts and Procedural History

Thirteen-year-old M.L. received from a friend a vehicle that had been stolen from Patty Parton. M.L., who did not have a driver's license, struck two other vehicles while he was driving but failed to stop at either scene. M.L. was arrested and the State alleged that he was a delinquent child by his commission of acts that, had he been an adult, would have been: Auto Theft, a Class D felony;[1] two counts of Failure to Stop after an Accident as a Class B misdemeanor;[2] and Driving Without a License, a Class C misdemeanor.[3] Pursuant to a plea agreement, M.L. admitted to the auto theft charge and agreed to make restitution in an amount to be deter-

mined by the court. The court dismissed the other three charges against M.L.

At the dispositional hearing, the trial court adjudicated M.L. a delinquent child and placed him on formal probation. The State also submitted a claim for a total of $3016.43 in restitution to cover Parton's car repairs and the other costs resulting from M.L.'s theft. The court subsequently awarded $2968.68 in restitution to Parton and ordered M.L. to complete sixty hours in a restitution work program, which would satisfy $300.00 of the total restitution obligation, leaving M.L. responsible for a balance of $2668.68. M.L. now appeals the trial court's restitution order.

### Discussion and Decision

■ M.L. argues that he was denied due process of law because the trial court failed to inquire into his ability to pay when it ordered him to pay restitution. Specifically, M.L. contends that "principles of fairness, due process, and common sense" obligated the trial court to inquire into his ability to pay because restitution is a condition of his probation. Appellant's Reply Br. p. 3. Because restitution is a condition of his probation, M.L. asserts, he is subject to the continuing jurisdiction of the juvenile court and to potential sanctions for violation of that condition of his probation, a prospect that implicates his "liberty interests."[4] *Id.* at 1, 3.

The State responds first that the juvenile statute authorizing restitution does

---

1. Ind.Code § 35–43–4–2.5.

2. Ind.Code §§ 9–26–1–1, –8.

3. Ind.Code § 9–24–18–1.

4. The record contains no specific indication of the potential consequences of a probation violation. However, "[p]robation is a matter of grace," and a person on probation is said to be "conditionally free." *Bahr v. State,* 634 N.E.2d 543, 545 (Ind.Ct.App.1994). Therefore, if M.L. were to violate a condition of probation, the consequences could be more harsh than a probation term. Indeed, during the initial hearing in this case, the court informed M.L. and his father that alternatives to probation include placement "outside the home in a structured environment ... in a secure or non-secure facility ... in the State of Indiana or outside the State of Indiana," including the "Indiana Boys School." Tr. p. 4. Such a possibility would certainly implicate M.L.'s "liberty interests."

not require courts to inquire into a juvenile's ability to pay before authorizing restitution. The State also contends that restitution is not a condition of M.L.'s probation, and therefore the trial court was not required to inquire into his ability to pay. In the alternative, the State asserts that even if restitution is a condition of M.L.'s probation, M.L. waived the inquiry requirement because he entered a plea agreement that left the amount of restitution to the discretion of the juvenile court.

An order of restitution is a matter within the trial court's discretion, and this Court should reverse only upon a showing of an abuse of that discretion. *J.P.B. v. State*, 705 N.E.2d 1075, 1077 (Ind. Ct.App.1999). An abuse of discretion occurs when the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

As a general rule, when restitution is ordered as a condition of probation, the trial court must inquire into the defendant's ability to pay in order to prevent indigent defendants from being imprisoned because of their inability to pay. *Ladd v. State*, 710 N.E.2d 188, 192 (Ind.Ct.App. 1999). The State contends that this rule is only applicable in the adult context, in which the restitution statute, Indiana Code § 35–38–2–2.3,[5] expressly requires an inquiry into a defendant's ability to pay, and not in the juvenile context, in which the restitution statute, Indiana Code § 31–37–19–5,[6] is silent as to a defendant's ability to pay.

This Court addressed a similar argument in the adult context in *Smith v. State*, 471 N.E.2d 1245 (Ind.Ct.App.1984), *reh'g denied, trans. denied.* In *Smith*, the defendant appealed the trial court's restitution order, alleging that the court had erred by failing to inquire into his ability to pay before ordering restitution. The State responded that the trial court was not required to make such an inquiry because the court made the order not under a previous version of Indiana Code § 35–38–2–2.3,[7] which requires an inquiry, but rather under Indiana Code § 35–50–5–3,[8]

---

**5.** Indiana Code § 35–38–2–2.3 provides:
(a) As a condition of probation, the court may require a person to do a combination of the following:
    \*   \*   \*   \*   \*   \*
(5) Make restitution or reparation to the victim of the crime for damage or injury that was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, *which may not exceed an amount the person can or will be able to pay,* and shall fix the manner of performance.
(emphasis added).

**6.** Indiana Code § 31–37–19–5 provides:
(b) The juvenile court may, in addition to an order under section 6 of this chapter, enter at least one (1) of the following dispositional decrees:
    \*   \*   \*   \*   \*   \*
(4) Order the child to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing.

**7.** Ind.Code § 35–7–2–1 (Repealed by P.L. 311–1983, Sec. 49.).

**8.** Indiana Code § 35–50–5–3 provides, in pertinent part:

(a) Except as provided in subsection (i), in addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime, the victim's estate, or the family of a victim who is deceased.

which does not. We held that the textual distinction between the two statutes is irrelevant because the same "equal protection concerns" that require an inquiry into the defendant's ability to pay under now-Indiana Code § 35–38–2–2.3 also require a similar inquiry in setting restitution under Indiana Code § 35–50–5–3 when restitution is made a condition of probation. *Smith,* 471 N.E.2d at 1249 (citing *Sales v. State,* 464 N.E.2d 1336, 1340 (Ind.Ct.App. 1984)).

In addition, it has been held that an inquiry into ability to pay is required by due process and fundamental fairness concerns if restitution is a condition of probation. *See Bearden v. Georgia,* 461 U.S. 660, 665, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (explaining that due process and fundamental fairness concerns converge with equal protection principles in the United States Supreme Court's analysis in cases involving financial obligations imposed on criminal defendants as conditions of probation); *see also Bahr v. State,* 634 N.E.2d 543, 545 (Ind.Ct.App.1994) (holding that fundamental fairness mandated by the Fourteenth Amendment to the United States Constitution requires that in probation revocation proceedings for the failure to pay restitution, a sentencing court must inquire into the reasons for the failure to pay) (citing *Bearden,* 461 U.S. at 673, 103 S.Ct. at 2073).

■ The State offers no reason, and we see none, why the reasoning found in *Smith, Bearden,* and *Bahr* should not extend to the juvenile context. That is, equal protection and fundamental fairness concerns require that a juvenile court must inquire into a juvenile's ability to pay before the court can order restitution as a condition of probation. On the other hand, when restitution is not a condition of probation, but rather a part of an executed sentence, an inquiry into the defendant's

ability to pay is not required. *Ladd,* 710 N.E.2d at 192. "In such a situation, restitution is merely a money judgment, and a defendant cannot be imprisoned for non-payment." *Id.* We must determine, then, whether M.L.'s restitution obligation was a condition of his probation, the violation of which could lead to his probation being revoked. We hold that it is.

The State points out that the written plea agreement did not indicate that restitution would be a condition of probation and that the juvenile court did not refer to the restitution order as a condition of probation in either its order at the hearing or in its order issued pursuant to the review hearing. However, the court's order after the restitution hearing incorporated the following language from the probation department's report: "It is ordered by the Court that said child is *placed on probation under the following conditions* which will be reviewed during Probation Review Hearing on 6/1/2005 ...." Appellant's App. p. 58–60 (emphasis added). The eleventh condition read: "That restitution in the amount of $2968.68 must be paid to the Trust Fund of the Court by the next Review Hearing." *Id.* at 59. The restitution obligation is a condition of M.L.'s probation, the violation of which could lead to M.L.'s probation being revoked.

■ As such, the court generally would be required to inquire into M.L.'s ability to pay before imposing the restitution obligation. The State contends, however, that M.L. waived his right to such an inquiry by agreeing to pay restitution and by entering a plea agreement that left the amount of restitution to the discretion of the juvenile court. We disagree.

It is true that M.L. entered into a plea agreement in which he agreed "to make restitution in an amount to be determined by the Court." *Id.* at 30. However, leaving the amount of restitution to the discre-

tion of the trial court is not tantamount to waiving one's right to have the trial court inquire into his or her ability to pay. Indeed, the two concepts are not incompatible. That is, while the trial court had the discretion to set the amount of restitution, it was constrained by principles of equal protection and fundamental fairness to set an amount within M.L.'s ability to pay because restitution was made a condition of probation.[9] *See Bearden,* 461 U.S. at 665, 103 S.Ct. 2064; *Bahr,* 634 N.E.2d at 545; *Smith,* 471 N.E.2d at 1249 (citing *Sales,* 464 N.E.2d at 1340).

Still, the State urges that M.L. waived his right to have the juvenile court inquire into his ability to pay when he agreed to leave the restitution open even after he became aware that Parton was seeking approximately $3000.00. On the contrary, an acknowledgment of the amount of restitution sought by a victim by no means constitutes an agreement to pay that amount. As such, we cannot accept the State's argument that M.L. waived his right to have the juvenile court determine his ability to pay.

**9.** We may have reached a different conclusion had M.L. agreed to pay a specific amount of restitution rather than leaving the amount of restitution to the discretion of the juvenile court. In such a case, it could fairly be said that the defendant has waived his right to have the court inquire into his ability to pay, and, in fact, has acknowledged his ability to pay the specified amount. These facts are not before us, and therefore we need not decide this issue.

**10.** There is a realistic possibility that M.L. will not be able to pay the amount of restitution in the time allotted by the juvenile court. The court imposed the restitution obligation of $2968.68 on March 2, 2005, and ordered M.L. to pay the full amount by the date of the review hearing, which was scheduled for June 1, 2005. M.L. is fourteen years old and unemployed, and his parents are not liable for his restitution obligation. *Compare* Ind.Code

The issue of whether M.L. is able to pay $2968.68 in restitution is a question of fact to be resolved by the trier of fact. In this case, there is no indication in the record that the juvenile court ever took into consideration M.L.'s ability to pay.[10] This was an abuse of discretion. *See J.P.B.,* 705 N.E.2d at 1077. M.L. is entitled to a hearing on the issue of his ability to pay and to modification of the existing restitution order if he is financially unable to meet its terms. *See Sales,* 464 N.E.2d at 1340. Therefore, we vacate the juvenile court's restitution order and remand for a new restitution order contingent upon the court's inquiry into M.L.'s ability to pay.

Vacated and remanded.

SULLIVAN, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I do not agree that the order of restitution must be reversed, and therefore respectfully dissent. Although I have reservations about several aspects of the majority opinion,[1] I will limit my brief

§ 31–40–1–3 ("A parent ... of a child adjudicated a delinquent child ... is financially responsible for any *services* ordered by the court under this section.") (emphasis added) with Ind.Code § 34–31–4–1 (limiting to $5000.00 a parent's *civil* liability for actual damages arising from harm to a person or damage to property knowingly, intentionally, or recklessly caused by the parent's child) (emphasis added). As such, M.L. may very well encounter some difficulty in meeting this obligation.

**1.** For example, I do not necessarily subscribe to the view that we should engraft all of the provisions in the statute pertaining to adult probation, (Ind.Code Ann. § 35–38–2–2.3 (West, PREMISE through 2005 Public Laws)), into the juvenile counterpart to that statute (Ind.Code Ann. § 31–37–19–5 (West, PREMISE through 2005 Public Laws)).

comments to one issue. That issue is the majority's conclusion that M.L.'s acceptance of the term contained in the plea agreement to "make restitution in an amount to be determined by the Court", *Appellant's Brief* at 6, does not impact the question of whether the trial court was required to conduct a hearing into M.L.'s ability to pay.

We have long held that plea agreements are in the nature of contracts entered into between the defendant and the State. *Lee v. State,* 816 N.E.2d 35 (Ind.2004). Such an agreement binds the defendant, the State, and the trial court with respect to the agreement's terms. *Id.* The purpose behind an order of restitution is twofold: (1) to impress upon the criminal defendant the magnitude of the loss he has caused, and (2) to defray costs to the victim caused by the offense. *Carswell v. State,* 721 N.E.2d 1255 (Ind.Ct.App.1999). The amount of restitution ordered must reflect actual loss to the victim. *Judge v. State,* 659 N.E.2d 608 (Ind.Ct.App.1995). In some cases, before determining the amount of the restitution award, the court must inquire into the defendant's ability to pay. I say "in some cases" because the statute governing juvenile restitution orders does not impose such a requirement, but the statute governing restitution in adult criminal cases does. I can find no case in which the principle heretofore applicable only to adult probation has been extended to include juvenile probation. But that is a different question. My focus is upon the effect that an agreement to pay restitution has on the trial court's obligation to inquire into the defendant's ability to pay.

The majority concludes M.L.'s agreement to pay restitution did not relieve the trial court of the obligation to determine his ability to pay. The majority acknowledges it may have reached a different conclusion if, in the plea agreement, M.L. had agreed to pay a specific amount, explaining that such would be tantamount to acknowledging his ability to pay. I agree with that reasoning. In that circumstance, there is no need to conduct a restitution hearing because the defendant, by agreeing to pay that amount, tacitly admits he can satisfy that obligation. As I indicated, the majority and I are in full agreement on the foregoing principles. I part ways with my colleagues in that I see no practical difference between agreeing to pay a specific amount, and, as M.L. did here, agreeing to pay restitution when you are aware of the amount of the loss the victim claims to have suffered. That is, Patty Parton, whose vehicle M.L. wrecked, claimed she incurred a loss of about $3000 and asked the court to order M.L. to reimburse her in that amount. While fully aware of the amount Parton was requesting, M.L. and his father asked the court to accept the plea agreement calling for M.L. to "make restitution in an amount to be determined by the court." *Appellant's Appendix* at 30. M.L. and his father knew that the court could award Parton the entire amount she asked for, and I can interpret the situation no other way than that they thereby agreed to pay the full amount requested if that is what the court decided. In my view, this is no different than agreeing to pay a sum certain. Both are tacit acknowledgments that the defendant is able to pay the amount ordered.

Finally, I believe the court's order is affirmable on another ground. Even assuming for the sake of argument that this is the sort of situation in which the court would be obligated to consider M.L.'s ability to pay before fashioning its restitution order, I believe that requirement has been satisfied. This court has held that a trial court did not err in failing to hold a hearing to determine the defendant's ability to pay restitution where that court heard evi-

dence from the defendant concerning the defendant's employment history and financial status, and the presentence report listed relevant financial information. *See Polen v. State*, 578 N.E.2d 755 (Ind.Ct.App. 1991), *trans. denied.*

Because it is relevant to my view of the case, I must register my disagreement with the majority's statement in dicta to the effect that M.L.'s parents cannot be ordered to help M.L. pay restitution to the victim. In support of this view, the majority cites Ind.Code Ann. § 31–40–1–3 (West, PREMISE through 2005 Public Laws), which provides that the parents of a child adjudicated to be delinquent are liable for any services ordered by the court under that section, and Ind.Code Ann. § 34–31–4–1 (West, PREMISE through 2005 Public Laws), which limits a parent's civil liability for actual damages caused by his or her child's knowing, reckless, or intentional conduct. It is not clear to me how those two provisions, read together, forbid a court from ordering the parents of a delinquent child to assist the child in reimbursing parties who suffered financial loss as a result of the child's delinquent acts. This is especially true of the latter provision, which contains the only arguable limitation on the court's power to fashion such an order. Again, that provision caps the parents' civil liability for damages caused by a child's delinquent acts at $5000. Although I can agree that this provision arguably places a similar cap on restitution orders in delinquency proceedings, I do not interpret it as foreclosing altogether parental participation in a restitution order.

In the instant case, M.L.'s Pre-dispositional Report indicated that M.L. was not employed, but that his father's income included $346 per month in AFDC payments and $499 per month in food stamps. In addition, M.L.'s father reported that he earns approximately $40–50 per week working for Whole Persons Ministries. Although M.L.'s parents were separated at the time of the dispositional hearing, they were still married. M.L.'s mother's income was not provided, but M.L.'s father testified that she worked at an Arby's restaurant. I note also that the court ordered M.L. to participate in a restitution work program, which would generate $300 to be paid to the victim as part of M.L.'s restitution obligation. Finally, M.L.'s father pledged to the trial court that he would make sure M.L. would "work and pay" his obligation by "raking leaves, shoveling snow" for "whatever the dollar amount [of the restitution award] is[.]" *Transcript* at 16. It is not clear to me what new information concerning M.L.'s, and M.L.'s family's, financial circumstances the court would have learned at a hearing to determine their ability to pay. On the facts of this case, pursuant to *Polen v. State*, 578 N.E.2d 755, no hearing was necessary to determine M.L.'s ability to pay, as all of the pertinent information was already before the court.

For the reasons set out above, I would affirm the trial court.