950 N.E.2d 731 (2011)
J.H., Appellant-Respondent,
v.
STATE of Indiana, Appellee-Petitioner.
No. 49A02-1005-JV-560.
Court of Appeals of Indiana.
June 3, 2011.
*733 Joel M. Schumm, Indianapolis, Indiana, Aaron Bentley, Certified Legal Intern, Indianapolis, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Indianapolis, IN, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
SHARPNACK, Senior Judge.

STATEMENT OF THE CASE
Respondent-Appellant J.H. appeals the restitution order issued by the Marion Superior Court, Juvenile Division. We reverse and remand with instructions.

ISSUES
The following issues are dispositive:
I. Whether the trial court's $1,117.65 restitution order was based on reasonable evidence.
II. Whether the trial court failed to inquire into the juvenile's ability to pay the ordered restitution.

FACTS AND PROCEDURAL HISTORY
On February 25, 2010, sixteen-year-old J.H. attempted to enter a neighbor's home without the neighbor's permission. In doing so, J.H. damaged a rear door of the neighbor's residence.
The State filed a petition alleging that J.H. had committed the offenses of attempted unlawful residential entry, a Class D felony if committed by an adult, Indiana Code section 35-43-2-1.5 (1991); and criminal mischief for causing damage in an amount less than $250.00, a Class B misdemeanor if committed by an adult, Indiana Code section 35-43-1-1 (2007). J.H. and the State reached a plea agreement whereby J.H. admitted to attempted unlawful residential entry, and the State dismissed the criminal mischief allegation. The plea agreement left open the issue of restitution.
Shortly before the initial hearing, the victim gave the deputy prosecutor a piece of paper that she described as an "estimate." No copies were provided to the defense or the court, and no additional evidence was offered in support of the estimate. The estimate, from a person identified as "Mr. Fix It," stated that it would take $850.00 to replace the door's window and $150.00 to tint the window.
J.H.'s counsel requested the setting of a restitution hearing so that Mr. Fix It and his estimate could be investigated. Counsel noted that $1,000 seemed "like an awfully large sum of money for a door." Tr. p. 7. After some discussion, a disposition hearing was set, with the possibility of a hearing on restitution.
Immediately before the disposition hearing, the victim again gave the deputy prosecutor a piece of paper she described as an "estimate." This time the estimate was for $1,117.65 from Tucker's Construction. Again no copies were provided to defense counsel or to the court, and no additional evidence or testimony regarding either estimate was presented. Defense counsel informed the court that it had subpoenaed the man identifying himself as "Mr. Fix It," but the man did not show up for court. When defense counsel objected to the new estimate, the court commented that it was "just $117 more" than the first estimate. Tr. p. 20.
The court entered a dispositional order finding that J.H. had entered an admission to the delinquent act and adjudicating J.H. a delinquent who committed attempted residential entry, a Class D felony if committed by an adult. The court committed J.H. to the Department of Correction, suspended *734 the sentence, and placed J.H. on probation. As a condition of probation, J.H. was ordered to pay restitution in the amount of $1,117.65. In the disposition order, the court made the following statement:
The Court notes that there is a dispute as to the restitution claim for [the victim]. [Defense counsel] objects to the additional restitution claim presented by the victim as it was just presented to parties [on] this date. The additional restitution claim is for $1,117.65.
Appellant's App. p. 10.

DISCUSSION AND DECISION

I. REASONABLENESS OF THE RESTITUTION ORDER
Pursuant to Indiana Code section 31-37-19-5 (2008), a juvenile court may order the child "to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing." The restitution order is within the court's discretion, and this court will reverse only upon a showing of an abuse of discretion. M.L. v. State, 838 N.E.2d 525, 528 (Ind.Ct.App. 2005), trans. denied. An abuse of discretion occurs when the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.
The adult restitution statute, Indiana Code section 35-50-5-3 (2006), requires that a restitution order for property damages be based on actual loss incurred by the claimant. See Shane v. State, 769 N.E.2d 1195, 1201 (Ind.Ct.App.2002). The adult statute is instructive when the juvenile statute is silent. M.L., 838 N.E.2d at 528-29. Evidence supporting a restitution order is sufficient "if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture." T.C. v. State, 839 N.E.2d 1222, 1227 (Ind.Ct.App.2005) (quoting State v. Kinneman, 155 Wash.2d 272, 119 P.3d 350, 357 (2005)).
Here, on two separate occasions, the victim waited until shortly before the hearing to give the deputy prosecutor a piece of paper with a dollar amount on it. The deputy prosecutor informed the juvenile court of the victim's late submissions and of the amount on the papers. The deputy prosecutor made no other statements and presented no other evidence to show the legitimacy of the pieces of paper.[1] Neither of the purported estimates was placed into evidence and neither is available for our review, so we cannot determine whether the dollar amounts were listed on papers containing any information, such as a letterhead, which would show the court that the paper came from a legitimate business. Furthermore, neither "estimate" showed the cost of labor and materials. Most importantly, the juvenile court failed to recognize that the State held the burden to establish the validity of the "estimates." We can come to no other conclusion than that the "estimates" were mere speculation or conjecture and that the juvenile court's order is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.
*735 The State argues that J.H. is making an argument on appeal that was not presented to the trial court. Thus, the State contends that the issue of the order's propriety is waived on appeal. We disagree. The argument below is the same as the argument on appealthat the State failed to present sufficient evidence to support the trial court's order.

II. INQUIRY INTO THE JUVENILE'S ABILITY TO PAY
Equal protection and fundamental fairness concerns require that a juvenile court inquire into a juvenile's ability to pay before the court can order restitution as a condition of probation. M.L., 838 N.E.2d at 529. In addition, while the juvenile court has "the discretion to set the amount of restitution, it [is] constrained by principles of equal protection and fundamental fairness to set an amount within [the juvenile's] ability to pay [when] restitution [is] made a condition of probation." Id. at 530. This is so because, as a general rule, "when restitution is ordered as a condition of probation, the trial court must inquire into the defendant's ability to pay in order to prevent indigent [juveniles] from being imprisoned because of their inability to pay." Id. at 528.
Here, the juvenile court conducted a thorough inquiry of J.H.'s mother's ability to pay. However, it is the juvenile's ability which is relevant. See T.C., 839 N.E.2d at 1224-25. The juvenile court did ask J.H. why he did not get a job, and upon hearing that J.H. had applied for jobs but had found none, the court remarked, "You can't get a job when you are young black male with no high school education.. . . You know, there's [sic] just no jobs available. . . . They closed the auto plants, everybody's looking for a job. You can shovel snow. You can do that easy [sic]. . . ." Tr. p. 4. The juvenile court later asked J.H. what he was doing during the summer, and J.H. replied that he was going to get a summer job. The juvenile court then changed the subject to J.H.'s schooling and did not return to its inquiry into J.H.'s ability to pay restitution.
It is difficult to ascertain the intent of the court's comments. Perhaps, the court was attempting to inform J.H. that he would have to lower his sights and take whatever job was available. No matter the intent of the comments, we cannot say that the court engaged in an inquiry sufficient to ascertain whether J.H. would be able to pay restitution. Indeed, the court's comments seem to indicate the opposite.

CONCLUSION
We reverse and remand with instructions that the juvenile court vacate its restitution order. If the State so desires, a new restitution hearing, consistent with this opinion, shall be conducted.
Reversed and remanded.
FRIEDLANDER, J., concurs.
MAY, J., concurring with separate opinion.
MAY, Judge, concurring with separate opinion.
I concur with the majority's decision to reverse and remand because it does not appear the trial court inquired into J.H.'s ability to pay restitution. I also agree that we are unable to say, based on the portions of the Record on Appeal provided by J.H., that there was probative evidence to support the trial court's determination of the amount of restitution. But I write separately to address the incompleteness of the Record provided to us and to express concern about the effect of such *736 omissions on our ability to provide meaningful appellate review.
As Judges on an Appellate Court, our duty is to review the trial court's work for error. We do not, however, reverse a judgment for every little mistake, because not every mistake at trial causes prejudice. See, e.g., Appellate Rule 66 (prohibiting reversal when the "probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties"). Furthermore, the level of scrutiny we apply when reviewing the trial court's decision depends on the procedural posture of the case and the issues raised by the parties. Compare Carr v. Pearman, 860 N.E.2d 863, 868 (Ind.Ct.App.2007) (reviewing de novo a court's decision to grant or deny motion to dismiss) with Tamasy v. Kovacs, 929 N.E.2d 820, 825-26 (Ind.Ct.App.2010) (reviewing for abuse of discretion a court's determination of child custody); and compare Atterholt v. Robinson, 872 N.E.2d 633, 639 (Ind.Ct.App.2007) (applying clearly erroneous standard to trial court's findings of fact) with Wisneskey v. State, 736 N.E.2d 763, 764 (Ind.Ct.App.2000) (when reviewing sufficiency of the evidence, we will not reweigh the evidence or judge the credibility of witnesses; we consider only the evidence most favorable to the verdict and the logical inferences to be drawn therefrom), trans. denied.
Where, as here, we are asked to review the trial court's findings of fact, our review is deferential; the trial court is in a better position than we are to assess the credibility of the witnesses and testimony. Id. In this circumstance, we affirm the trial court's findings if there are any facts or inferences from the facts that would support them, even if other facts or inferences might be contrary to the trial court's findings. Id. Thus, to affirm the court's finding of the ultimate fact, on which stands the challenged judgment, we need only one piece of evidence in the Record on Appeal. See id. (uncorroborated testimony of child victim is sufficient to support a conviction of child molesting).
The Record on Appeal is "the Clerk's Record and all proceedings before the trial court or Administrative Agency, whether or not transcribed or transmitted to the Court on Appeal." Ind. Appellate Rule 2(L); see also App. R. 27 (same). Our Rules provide a list of the documents and other items that "shall" be included in an Appendix, see App. R. 50, but decisions as to which portions of the Record on Appeal to transmit to us are left ultimately to the parties. See App. Rules 49, 50 (parties required to provide appendices containing information from Record on Appeal that is necessary and relevant to the issues raised on appeal).
In this case, the juvenile court ordered a pre-dispositional report. (See App. at 6 (entry in chronological case summary (CCS).)) The probation department submitted that report to the trial court on April 9. (Id.) The pre-dispositional report indicates the victim's impact statement "was completed and scanned into quest on 3/11/10."[2] (App. at 56.) Although no entry in the CCS demonstrates the filing of the victim impact statement, I believe other facts and circumstances in the record require us to infer it occurred.
During the first dispositional hearing, the prosecutor and defense counsel discussed the pre-dispositional report and victim's impact statement:
There's a victim's impact . . . has been scanned into quest. And [victim] is also here. In the . . . In the document that was scanned, there . . . Seems like there was a, a range of $750 to $1,000.00 in just the, the damage to the door.
*737 (Tr. at 6.) The prosecutor also provided the court and J.H.'s counsel with an additional estimate that the victim had given to the prosecutor that day.
J.H. requested a recess to contact the party who had prepared the newly-submitted estimate, but he did not object to the State's discussion of the previously-filed victim impact statement, allege any error in the pre-dispositional report's indication that statement was filed, or argue the court should not consider the victim impact statement as it set restitution.
On the second day of the dispositional hearing, the State told the court:
Also, regarding restitution, I know we introduced evidence at the last hearing for the restitution amount. At that time, the only estimates we had was (sic) for $1,000.00 which matches her deductible. I just received a second estimate where the total is $1,117.65 and that was from Tucker's Construction. Again I don't have any copies for the Court or defense, as I just received this.[3] That is, that is the amount for the second estimate.
(Id. at 15) (footnote added).[4]
On appeal, J.H. submitted an Appendix that includes the pre-dispositional report, but does not include the victim impact statement. That statement could constitute sufficient evidence to support the restitution order. See, e.g., Cherry v. State, 772 N.E.2d 433, 438 (Ind.Ct.App.2002) (holding victim impact statement provided sufficient evidence to uphold trial court's determination of restitution due to victim). However, in response to our request that he supplement his Appendix with this document, J.H. contends the victim's impact statement was not part of the Record on Appeal.[5] I disagree.
"Upon finding that a child is a delinquent child, the juvenile court shall order a probation officer to prepare a predispositional report. . . ." Ind.Code § 31-37-17-1(a). After its completion, the court "shall provide a copy to each attorney, guardian ad litem, or court appointed special advocate representing the child. . . ." Ind.Code § 31-37-17-6(b). A pre-dispositional report "should theoretically be a neutral document issued by the county probation department." See Shuttleworth v. State, 469 N.E.2d 1210, 1215 (Ind.Ct.App.1984) (discussing pre-sentencing report). Nevertheless, the court must give the parties "a fair opportunity to controvert any part of the report." Ind.Code § 31-37-18-2(c).[6] After *738 doing so, the court may rely on the information in the report as it makes its dispositional determinations. See, e.g., Ind.Code § 31-37-18-9 (juvenile court may incorporate findings from pre-dispositional report into its final order).
Probation officers are expected to include a victim impact statement in the pre-dispositional report.[7]See Ind.Code § 35-38-1-9(d) (If probation officer is unable to obtain victim's impact statement, "he shall certify to the court: (1) that he has attempted to contact the victim; and (2) that if he has contacted the victim he has offered to accept the written statements of the victim or to reduce his oral statements to writing. . . ."); see also Cloum v. State, 779 N.E.2d 84, 93 (Ind.Ct.App.2002) ("victim impact statements are an integral part of the sentencing process, and in fact trial courts are required to receive and consider them"). As we noted earlier, a victim impact statement in a pre-dispositional report alone may support a court's finding as to the damages sustained by the victim. See, e.g., Cherry, 772 N.E.2d at 438 (trial court used only victim impact statement to determine amount of restitution).
J.H. asserts the pre-dispositional report's reference to the victim's impact statement, and the fact that it was available from the court's electronic docketing system, do not make that document part of the Record on Appeal. But our rules explicitly permit incorporation by reference. See, e.g., Ind. Trial Rule 10(C) ("Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); see also Young v. State, 562 N.E.2d 424, 428 (Ind.Ct.App. 1990) (upholding trial court's consideration of portions of pre-sentencing report incorporated by reference into sentencing order).[8] Thus, I would hold the victim's impact statement, as part of the pre-dispositional report, was undoubtedly part of the trial court's Record, see T.R. 9.2(B) ("When a pleading is founded on a written instrument and the instrument . . . is included in or filed with the pleading . . . the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action. . . ."), and I would direct the Trial Court Clerk to print that document from Quest and send it to us.[9]See App. R. 27 ("Any provision of these Rules regarding preparation of the Record on Appeal may be enforced by order of the Court on Appeal."); see also Adamson v. Norwest Bank, NA, 609 N.E.2d 35, 39 (Ind.Ct.App. 1993) (where appellant did not file all portions of record required to decide issues on appeal, appellate court could order them prepared and then charge costs to appellant).
The Notice of Appeal filed by the Public Defender requesting the record states:

*739 The clerk of the Marion Superior Court, Juvenile Division, Room No 3 is requested to assemble and copy, in chronological order, all papers filed, or offered for filing, in this action. This is to include certified copies of all process, pleading, petitions, motions, exhibits, stipulation, order, order book entries and other written documents filed or offered to be filed during the proceedings, including this Notice of Appeal.
(App. at 1.) It is obvious that the clerk failed to provide the requested documents, hindering counsels' ability to prepare their briefs and our review of the case.
J.H. suggests our consideration of a document that neither he nor the State had when preparing their briefs "contravene[s] the Appellate Rules," and denies him the opportunity to "fully and fairly litigate his appeal." (Motion to Vacate at 3.) The copy of the pre-dispositional report included in J.H.'s Appendix contains indications it was printed from Quest; this suggests the clerk could have printed the victim's impact statement when retrieving from Quest the other documents requested. In addition, this also suggests counsel could have requested the clerk to print the victim's impact statement. I cannot find it "unfair" for us to have access to a document that is part of the Record on Appeal because the clerk failed to include it in the Record provided to counsel, or because counsel did not request the clerk print it so as to include it in the Appendix.[10] Rather, what I view as "unfair" in this circumstance is that we must ask an already over-burdened trial court to hold another hearing and issue another order regarding restitution, when the entire Record was not provided on Appeal, and Appellee's counsel did not provide an appendix including the missing parts of the Record.
While I concur with the majority's result, our decision must be read in light of the procedural missteps by trial counsel, the clerk, the trial court, and appellate counsel, as I have noted herein. These issues are not unique to this case, and are troubling when liberties are at stake. Parties to an appeal and trial courts must strive to provide a complete and accurate record of the events before the trial court in order to assure we are able to provide meaningful review on appeal.
NOTES
[1] The victim was present at both hearings and was presumably available for questioning. Indeed, the court did ask the victim during the first hearing whether she received a written estimate, to which he received an affirmative response. No questions were asked of the victim pertaining to the second "estimate," which was the document accepted by the court.
[2] Quest is the electronic docketing system used by Marion County.
[3] If something is purported to be "evidence" to establish an amount being claimed for restitution, the party seeking to use it should ensure it can be provided to the court and opposing counsel. Counsel presumably could have found a copy machine.
[4] I would note the trial court indicated during the second hearing that it did not have a copy of the estimate submitted earlier. The fact a document so integral to the proceedings was not copied following the first hearing and scanned into Quest or included in the record is a perfect example of the many missteps committed by counsel and the trial court during these proceedings.
[5] It is not apparent why a document scanned into Quest, discussed by counsel in court, and from which damage amounts apparently were used, would not be a part of the Record on Appeal. Scanning an item into a document or case management system does not remove it from the Clerk's Record; if it did, there would be no reason to scan anything into a document or case management system.
[6] This section also states, "Any predispositional report may be admitted into evidence. . ." Ind.Code § 31-37-18-2(a). As J.H. did not object to the admission of the pre-dispositional report at trial, does not assert that issue on appeal, and included the pre-dispositional report in his appendix, I presume J.H. does not take issue with the admission of the pre-dispositional report.
[7] I use "pre-dispositional" and "pre-sentencing" interchangeably, as they serve a similar purpose in juvenile delinquency proceedings. Ind.Code §§ 31-32-1-1 and -2 allow for the use of adult criminal trial rules and applicable laws in juvenile proceedings.
[8] The informal nature of sentencing hearings allow for introduction of evidence with fewer restrictions than a trial. See Ind. Evid. Rule 101(c) ("The rules, other than those with respect to privileges do not apply in the following situations . . . Proceedings relating to . . . sentencing.")
[9] As we move toward a paperless judicial system, it may be helpful if there were a procedural mechanism whereby, on a showing of cause, we could obtain access to a trial court's electronic records system to confirm the existence or contents of documents that were not provided by the parties.
[10] Appellant's counsel represented to this court that he never received a copy of the victim's impact statement. As a result, I believe the initial error originated with the clerk's office. However, neither appellant's nor appellee's counsel provided an appendix including the missing parts of the Record. See App. Rules 49(A) and 50(B)(2) (permitting an appellee to file an appendix that supplements the appellant's appendix). Additionally, trial courts must exercise diligence when preserving for appeal those items the parties submit to them. In this case estimates referenced in open court were not copied for the court or opposing counsel, and allegedly cannot be found in the clerk's paper record or on the electronic docketing system; documents scanned into quest were not included in the record provided to counsel by the clerk; and many entries on the CCS are vague or incomplete. Inadequate organization and compilation of the record hinders our ability to review the issues raised on appeal.