**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 31 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICOLE DRAUGHON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-CR-995 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patricia J. Gifford, Senior Judge
Cause No. 49G04-0507-FC-124515

**July 31, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Micole Draughon (Draughon), appeals her sentence for criminal recklessness, a Class C felony, Ind. Code § 35-42-2-2.

We affirm in part, reverse in part, and remand with instructions.

ISSUES

Draughon raises two issues on appeal, which we restate as follows:

(1) Whether the trial court committed fundamental error by ordering Draughon to pay restitution of $5,000 without conducting an inquiry into her ability to pay;

(2) Whether the trial court committed fundamental error by determining the restitution amount based on insufficient evidence;

(3) Whether the trial court committed fundamental error by failing to fix the manner of her payment of restitution; and

(4) Whether the trial court committed fundamental error by failing to conduct an indigency hearing prior to imposing fees and costs.

FACTS AND PROCEDURAL HISTORY

On July 19, 2005, David Williams (Williams) and Draughon discussed yard work that he performed for Draughon's grandmother. Following an exchange of words, Draughon entered her grandmother's van and "put the vehicle in drive and struck [Williams] and then struck a parked car. The impact was so hard that it pushed the

2

vehicle several feet from its original location." (Transcript p. 8). Williams sustained significant injuries and was taken to a hospital. Draughon was later apprehended.

On July 21, 2005, the State filed an Information charging Draughon with Count I, criminal recklessness, a Class C felony, I.C. § 35-42-2-2. On August 12, 2005, the trial court placed Draughon in community corrections on pre-trial release. On October 3, 2005, the State moved to revoke Draughon's pre-trial release in response to threats she made to Williams, which was granted by the trial court that same day. On October 11, 2005, Draughon failed to appear at a guilty plea hearing and fled to Kentucky.

On April 12, 2011, Draughon was arrested. On September 7, 2011, the trial court ordered the probation department to prepare a presentence investigation report (PSI). The PSI revealed that Draughon's sole income consisted of monthly social security benefits in the amount of $674 per month. On October 5, 2011, Draughon entered into a plea agreement with the State in which she agreed to plead to guilty to Count I. The plea agreement provided in relevant part:

> 4. At the time of the taking of the guilty plea and again at the time of the Defendant's sentencing, the State reserves the right to question witnesses and comment on any evidence presented upon which the [c]ourt may rely to determine the sentence to be imposed; to present testimony or statements from the victims(s) or victim representative(s), and the State of Indiana and the Defendant agrees [sic] that the [c]ourt shall impose the following sentence:
>
> OPEN TO THE COURT
>
> Defendant is to have No Contact with [Williams]
>
> Defendant shall owe Restitution to [Williams] in the amount $T.B.D.

3

(Appellant's App. p. 59).

That same day, the trial court held a guilty plea and sentencing hearing. The trial court accepted Draughon's guilty plea and proceeded to sentence her. Williams appeared and testified as to the extent of his injuries and economic losses. Specifically, he underwent a number of painful operations to repair his fractured left leg following the incident. These operations included the implant and removal of rods and bolts in his leg, ankle, and knee over the course of two years. Ultimately, Williams' leg failed to respond to treatment and he underwent a bone graft requiring his leg to be fractured again.

Williams also testified that he lost his commercial driver's license and was unable to work for almost four years following the accident and lost wages as a result. After repair of his leg, Williams borrowed $5,000 for schooling to reobtain his commercial driver's license and remained deep in debt as a result of not working for four years. The trial court questioned Williams about his hospital bills and Williams testified that "they kind of took care of some of it, but I think I'm in debt about $5,000." (Tr. p. 18). Apart from Williams' testimony, the State presented no other evidence substantiating his injuries or economic losses.

The trial court sentenced Draughon to eight years, with six years suspended and two years to be served through community corrections in the mental health component. The trial court ordered Draughon to pay $5,000 in restitution to Williams as a condition of her community corrections and probation sentences. The trial court also ordered her to pay court costs and fees in the amount of $1,645.

4

Draughon now appeals.  Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Draughon contends that the trial court erred by ordering restitution without conducting an inquiry into her ability to pay and that there was insufficient evidence to support the amount of restitution.  Draughon also argues that the trial court erred by failing to fix the manner of her performance and failing to determine her indigency prior to ordering restitution.  The State responds that the trial court conducted an adequate inquiry and that it proved the extent of Williams' losses.  Although it concedes that the trial court did not fix the manner of performance, the State argues that consideration of Draughon's indigency is not ripe until it petitions to revoke her probation for failure to pay restitution.

Initially, we note however that Draughon did not object to the restitution amount, fines or costs at the sentencing hearing.  Ordinarily, this would result in waiver and preclude our review.  However, we will address restitution issues on the grounds of fundamental error despite the lack of any objection.  *See Lohmiller v. State*, 884 N.E.2d 903, 915-16 (Ind. Ct. App. 2008).  "Fundamental error is error such that, if not rectified, would be a denial of fundamental due process."  *Ware v. State*, 816 N.E.2d 1167, 1179 (Ind. Ct. App. 2004).  An improper sentence constitutes fundamental error.  *Id*.  We will therefore consider Draughon's claim on the merits. [1]

---

[1] The State also argues that Draughon waived her challenge to an inquiry on her ability to pay restitution and the amount thereof based upon her verbal agreement with the trial court to pay restitution and the language of the plea agreement.  However, "leaving the amount of restitution to the discretion of the trial

I. *Restitution*

The trial court has broad authority to order restitution. *See* I.C. § 35-50-5-3(a). Restitution is a matter within the sound discretion of the trial court and will be reversed only upon a finding of abuse of discretion. *Ault v. State*, 705 N.E.2d 1078, 1082 (Ind. Ct. App. 1999). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011).

A. *Ability to Pay*

The trial court may impose restitution as a condition of probation or as a part of an executed sentence. I.C. § 35-50-5-3(a); *Pearson v. State*, 883 N.E.2d 770, 772 (Ind. 2008). If the trial court imposes restitution as a condition of probation, it must conduct an inquiry under I.C. § 35-38-2-2.3(a)(5) to determine the defendant's ability to pay. *Pearson*, 883 N.E.2d at 772. However, when the trial court orders restitution as part of the sentence, no hearing is required because "restitution is merely a money judgment," for which "a defendant cannot be imprisoned for non-payment." *Id.* at 773. Here, the trial court ordered Draughon to pay restitution as "a condition of [her] being in [c]ommunity corrections and also of probation." (Tr. p. 36). As Draughon could be

court is not tantamount to waiving one's right to have the trial court inquire into his or her ability to pay." *M.L. v. State*, 838 N.E.2d 525, 529-30 (Ind. Ct. App. 2006), *trans. denied*. Further, the express language of the plea agreement and the State's inquiry to the trial court at the close of the hearing on the amount of restitution both contradict the notion that Draughon left the amount of restitution to the State's discretion. Accordingly, we address the merits of Draughon's appeal.

imprisoned for failing to pay restitution upon release from incarceration, her restitution obligation is part of her probation. Thus, the trial court was required to conduct an inquiry under I.C. § 35-38-2-2.3(a)(5) to determine Draughon's ability to pay restitution.

While I.C. § 35-38-2-2.3(a)(5) requires an inquiry, it does not specify the manner of inquiry. *Laker v. State*, 869 N.E.2d 1216, 1220 (Ind. Ct. App. 2007). The trial court must consider the defendant's ability to pay, which includes factors such as the defendant's financial information, health, and employment history. *Champlain v. State*, 717 N.E.2d 567, 570 (Ind. 1999). The trial court may conduct a proper inquiry of the defendant's ability to pay by reviewing the PSI. *Laker*, 869 N.E.2d at 1221.

Highlighting the lack of testimony at the sentencing hearing about her financial condition, Draughon contends that the trial court failed to conduct an inquiry into her ability to pay. Although no express inquiry was made at the guilty plea and sentencing hearing, the PSI contains Draughon's reported financial condition: Draughon stated that she received $674 in monthly social security benefits beginning around 2009 and had had no bank accounts or past-due debts.[2]

Further, the PSI contains a handwritten notation that the presiding judge reviewed the PSI less than a month before the guilty plea and sentencing hearing and the record contains references to the PSI by both the trial court and Draughon's counsel. The trial

---

[2] In her appellant's brief, Draughon contended that social security benefits should not be included in the trial court's inquiry on her ability to pay restitution. However, prior to filing of the State's brief, our supreme court held that social security benefits may be properly considered by the trial court in determining the defendant's ability to pay restitution. *See Kays v. State*, 963 N.E.2d 507, 510-11 (Ind. 2012). In her reply brief, Draughon concedes that *Kays* forecloses consideration of this issue.

court asked Draughon's counsel if she and Draughon had read the PSI and had any corrections to make. Draughon's counsel referred to Draughon's PSI during closing argument and review. Finally, the trial court expressly relied upon the PSI in determining Draughon's sentence. Because the PSI contained sufficient information to allow the trial court to conduct an inquiry into her ability to pay and the PSI was relied upon by both the trial court and her counsel, we conclude that the trial court adequately inquired into Draughon's ability to pay restitution. *See Mitchell v. State*, 559 N.E.2d 313, 315 (Ind. Ct. App. 1990), *trans. denied*.

### B. *Restitution Amount*

Draughon next contends that the restitution amount was based on insufficient evidence. In pertinent part, I.C. § 35-50-5-3(a) requires the trial court to base its restitution order on "medical and hospital costs incurred by the victim" and "earnings lost by the victim" prior to sentencing. I.C. § 35-50-5-3(a)(2); -(4). The restitution amount must be based on the actual loss incurred by the victim. *See Kotsopoulos v. State*, 654 N.E.2d 44, 47 (Ind. Ct. App. 1995), *trans. denied*. Evidence supporting a restitution order is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. *J.H. v. State*, 950 N.E.2d 731, 734 (Ind. Ct. App. 2011).

Draughon contends that Williams' testimony on the extent of his losses was unsupported and thus an insufficient basis for the trial court to order restitution of $5,000. We disagree. Despite Williams' two separate assertions that he was $5,000 in debt,

8

Draughon seizes upon the different contexts in which he mentioned the amount of loss to argue that his testimony could either reflect medical expenses or lost wages. In particular, Draughon points to the following exchange between Williams and the trial court.

> [TRIAL COURT]: I did understand that you got your commercial license back?
>
> [WILLIAMS]: Yes ma'am.
>
> [TRIAL COURT]: But you can't work now because of something else?
>
> [WILLIAMS]: No, ma'am
>
> [TRIAL COURT]: So you still owe all of the hospital bills?
>
> [WILLIAMS]: I have (inaudible) and they kind of took care of some of it, but I think I'm in debt about $5,000.
>
> [TRIAL COURT]: About $5,000.
>
> [WILLIAMS]: Yes, ma'am.

(Tr. pp. 18-19).

Draughon's argument ignores Williams' testimony prior to questioning by the trial court. The State first elicited testimony from Williams that because of his injuries he could no longer work as a commercial driver and lost his commercial driver's license because he could not pass a physical examination. After his leg healed sufficiently, Williams had "to borrow $5,000" to attend school and reobtain his commercial driver's license. (Tr. p. 15). Because Williams never wavered on the amount of his loss, we find that the trial court had a sufficient basis to calculate the restitution amount of $5,000.

9

While Draughon also attacks the restitution amount on the absence of documentary evidence to substantiate William's actual losses, testimony supporting a finding that losses occurred, even without documentary evidence has been recognized as sufficient. *See Blixt v. State*, 872 N.E.2d 149, 153-54 (Ind. Ct. App. 2008). Moreover, "[t]he informal nature of sentencing hearings allow for introduction of evidence with fewer restrictions than a trial." *J.H.*, 950 N.E.2d at 738 n.8; *see also* Ind. Evid. Rule 101(c). As a result, we conclude that there is an adequate factual basis for the trial court's restitution order.

## II. *Manner of Payment and Indigency Hearing*

Both Draughon and the State concede that the trial court did not fix the manner of performance in which the defendant is to pay restitution under I.C. § 35-38-2-2.3(a)(5). That statute provides that the trial court must determine the manner and time frame for payment of restitution. *Laker*, 869 N.E.2d at 1221. We therefore remand to the trial court for a determination of the manner for payment of restitution.

Additionally, Draughon argues that the trial court failed to conduct a hearing to determine whether she is indigent as to fees and costs prior to their imposition. The trial court imposed fees and costs of $1,645, making the payment thereof a condition of Draughon's probation. In response, the State argues that the trial court is not required to conduct an indigency hearing until Draughon completes the executed portion of her sentence. Following the submission of the State's brief, Draughon submitted a supplemental appendix containing discharge orders from community corrections that

10

establish completion of her executed sentence. Accordingly, we remand to the trial court for a hearing to determine Draughon's indigency as to fines and costs.

CONCLUSION

Based on the foregoing, we conclude that the trial court did not commit fundamental error by ordering Draughon to pay restitution of $5,000. However, we reverse and remand with instructions to the trial court to hold a hearing on the manner in which restitution is to be paid and to determine Draughon's indigency as to fees and costs.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J. and DARDEN, S. J. concur