## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Megan Shipley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

J. K.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

October 29, 2015

Court of Appeals Case No.
49A02-1504-JV-231

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott Stowers, Magistrate

Trial Court Cause No.
49D09-1412-JD-2876

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, J.K., appeals the trial court's order of restitution following his adjudication as a juvenile delinquent for the offense of theft, which would be a Class A misdemeanor if committed by an adult, Ind. Code § § 35-43-4-2(a).

We affirm in part and remand in part.

## ISSUE

J.K. raises two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court abused its discretion by ordering J.K. to pay $800.00 in restitution as a condition of his probation.

## FACTS AND PROCEDURAL HISTORY

On September 28, 2014, fourteen-year-old J.K. grabbed an iPod out of a schoolmate's hands while they were riding the school bus, and he refused to return it upon the owner's request. After the theft was reported, the Indianapolis Metropolitan Police Department (IMPD) made contact with J.K.'s mother, who explained that she had confiscated an iPod from J.K. after discovering it in his possession. The stolen iPod was turned over to the IMPD.[1] On December 4, 2014, the State filed a petition alleging J.K. to be a delinquent child. Specifically, the petition charged that J.K. had committed Count I, theft,

---

[1] The IMPD also recovered several other electronic devices, which had been reported stolen following an earlier break-in at the same schoolmate's home, from J.K.'s bedroom.

a Level 6 felony if committed by an adult, I.C. § 35-43-4-2(a)(1)(A); and Count II, theft, a Class A misdemeanor if committed by an adult, I.C. § 35-43-4-2(a).

On March 3, 2015, the State and J.K. entered into an Admission Agreement, whereby J.K. admitted to the allegation of Count II, theft as a Class A misdemeanor if committed by an adult, in exchange for the State's dismissal of Count I, theft as a Level 6 felony if committed by an adult. The Admission Agreement further provided that the State would recommend a disposition of formal probation, and J.K. "agree[d] to make restitution to the victim(s) for the following amount: parties stipulate the amount [of] $800.00. Parties left the ability to pay to [the] court." (Appellant's App. p. 48). On March 31, 2015, the trial court conducted a dispositional hearing and accepted the Admission Agreement, placing J.K. on probation until September 29, 2015. As a special condition of probation, the trial court ordered J.K. to "[p]ay to the Clerk $800.00 restitution to be withdrawn by [the theft victim and his father]." (Appellant's App. p. 10).

J.K. now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

A restitution order is a matter within the discretion of the trial court, and our court will reverse only upon a showing of an abuse of that discretion. *M.L. v. State*, 838 N.E.2d 525, 528 (Ind. Ct. App. 2005), *reh'g denied, trans. denied*. We will find an abuse of discretion if "the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court or the

reasonable, probable, and actual deductions to be drawn therefrom." *Id.* J.K. claims that the trial court abused its discretion by ordering J.K. to pay $800.00 in restitution "because the evidence establishes that J.K. is indigent and cannot pay restitution." (Appellant's Br. p. 3).

[8] A juvenile court is authorized to "[o]rder the child to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing." I.C. § 31-37-19-5(b)(4). "The purpose behind an order of restitution is to impress upon a juvenile delinquent the magnitude of the loss he has caused and to defray costs to the victim caused by the delinquent act." *M.M. v. State*, 31 N.E.3d 516, 519 (Ind. Ct. App. 2015) (internal quotation marks omitted). Here, J.K. specifically agreed in his plea agreement that he owed restitution in the amount of $800.00, contingent upon the trial court's determination that he has the ability to make such a payment. The issue of whether J.K. is able to pay $800.00 in restitution "is a question of fact to be resolved by the trier of fact." *M.L.*, 838 N.E.2d at 530.

[9] "Equal protection and fundamental fairness concerns require that a juvenile court inquire into a juvenile's ability to pay before the court can order restitution as a condition of probation." *J.H. v. State*, 950 N.E.2d 731, 735 (Ind. Ct. App. 2011). This inquiry is intended "to prevent indigent [juveniles] from being imprisoned because of their inability to pay." *Id.* (alteration in original). While the trial court must decide whether the defendant is able to pay the

amount of restitution ordered, "the [restitution] statute[2] does not specify the extent to which the trial court must inquire to determine the defendant's financial status." *Smith v. State*, 990 N.E.2d 517, 522 (Ind. Ct. App. 2013), *trans. denied*. However, "[o]ur decisions envision at least a minimal inquiry into the defendant's ability to pay restitution." *Kays v. State*, 963 N.E.2d 507, 510 (Ind. 2012). In general, the inquiry should entail a consideration of factors including the defendant's financial status, health, and employment history. *Laker v. State*, 869 N.E.2d 1216, 1221 (Ind. Ct. App. 2007).

[10] At the dispositional hearing, J.K. testified that he is unemployed and does not possess a work permit, and he does not have a bank account or any money saved. He stated that he sometimes receives an allowance of $10.00 from his mother, but "not very often." (Tr. p. 11). Although he voluntarily performs community services such as sweeping the parking lot of a local barber shop and assisting at a food bank and with Toys for Tots, these are unpaid positions.

[11] J.K. argues that this case is analogous to *T.H. v. State*, 33 N.E.3d 374, 376 (Ind. Ct. App. 2015), in which our court reversed the trial court's order for a fifteen-year-old to pay $1,500.00 in restitution as a condition of his probation. In *T.H.*, we found the undisputed evidence established that the fifteen-year-old "did not

---

[2] Except for Indiana Code section 31-37-19-5(b)(4), "[n]o other applicable provision of the juvenile code on delinquency discusses restitution imposed during a delinquency proceeding." *M.M.*, 31 N.E.3d at 519-20. Nonetheless, we have previously held that the adult restitution statute, Indiana Code section 35-50-5-3, "is instructive when the juvenile [restitution] statute is silent." *Id.* at 520. In addition, we also look to Indiana Code section 35-38-2-2.3(a)(6), which specifically discusses restitution as a condition of probation.

have a work permit, did not have a job, did not have a bank account, did not have any money in savings, owned no property, and did not have anything else in his name." *Id.* T.H. further suffered from "a list" of disabilities for which he received $700.00 in monthly SSI disability benefits; however, T.H.'s mother relied on this income to support T.H. and his six siblings. *Id.* at 375-76. Despite T.H.'s testimony "that he would 'try to' get a job when he reached the age of sixteen," he was unemployed at the time of the dispositional hearing, and we found "no evidence in the record whatsoever that remotely tends to establish that T.H. is able to pay restitution in any amount, much less an aggregate amount of $1,500." *Id.* at 376.

[12] Although we agree with J.K. that *T.H.* is factually similar to the case at hand, we nevertheless find important distinctions. First, although J.K. suggests that "[t]here was no realistic possibility" that he could earn the money based on his age and diagnoses of Asperger's Syndrome and Disruptive Behavior Disorder, he admitted during the dispositional hearing that he does not suffer from any disability that would prevent him from working. (Appellant's Br. p. 7). Based on the fact that J.K. has already been working in several non-paid positions, it is clear that he is able-bodied, willing to work, and capable of following the instructions of would-be employers. Second, J.K. specifically testified that he "wouldn't have a problem doing" odd jobs around the neighborhood to earn income, such as cleaning up trash, shoveling snow, or mowing grass. (Tr. p. 12). The trial court specifically questioned J.K.'s mother as to whether J.K. would be "capable of earning some bucks in the neighborhood? You said he

likes to sweep the barber shop, things like that. Any reason why he couldn't go out and earn some money of his own?" (Tr. p. 16). While J.K.'s mother noted that "[m]ost [of] the people in our neighborhood have . . . lawn services and all that[,]" she indicated that nothing would preclude him from seeking opportunities in the neighborhood to earn income. (Tr. p. 16). Third, in *T.H.*, the plea agreement "made no mention of restitution." *T.H.*, 33 N.E.3d at 375. Here, however, J.K. specifically agreed that he owed $800.00 in restitution to the victim(s) of his crime. While J.K. preserved the right to have the trial court determine his ability to pay this restitution, the trial court clearly considered several factors in determining that J.K. should "be responsible for paying" and was capable of doing so in due course. (Tr. p. 16). Thus, we cannot say that the trial court abused its discretion in determining J.K.'s ability to pay restitution.

[13] Notwithstanding J.K.'s ability to pay the ordered restitution, J.K. contends that a remand is necessary because the trial court failed to "fix the manner of performance" as required by Indiana Code section 35-38-2-2.3(a)(6). Specifically, J.K. asserts that the trial court did not establish a time frame or payment plan for the payment of the restitution. In *Laker*, 869 N.E.2d at 1221, our court noted that as part of its obligation to fix the manner of performance, the trial court was required to "identify the manner and *time frame* in which [the defendant] must pay [the ordered] restitution" (emphasis added). In this case, the trial court ordered a six-month period of probation and instructed J.K. to "[p]ay to the Clerk $800.00 restitution to be withdrawn by [the theft victim and

his father]." (Appellant's App. p. 10). While the trial court did not articulate that the restitution was to be paid in full during J.K.'s probationary period, our court has recently clarified that, as a matter of law, a juvenile's restitution obligation does "not terminate upon his discharge from probation." *M.M.*, 31 N.E.3d at 521-22. Rather, restitution is considered an "'independent disposition[]' which survive[s] the expiration of the period of probation" so "action can be taken either during or after the probationary period to recover restitution which was made a condition of the probation." *Id.* (quoting *Wininger v. Purdue Univ.,* 666 N.E.2d 455, 457-48 (Ind. Ct. App. 1996), *reh'g denied, trans. denied*). Nonetheless, it is neither judicially efficient nor fair to the victim to permit a defendant to prolong his obligation to pay for an indefinite period of time. Therefore, we remand with instructions for the trial court to fix a reasonable deadline for J.K. to satisfy his restitution obligation.

[14] Lastly, J.K. contends that the trial court "improperly considered J.K.'s mother's ability to pay and assumed J.K. would pay her back." (Appellant's Br. p. 8). As J.K. correctly asserts, "it is the juvenile's ability [to pay restitution] which is relevant" because a juvenile's "parents are not liable for [the juvenile's] restitution obligation." *J.H.*, 950 N.E.2d at 735; *M.L.*, 838 N.E.2d at 530 n.10. In particular, J.K. argues that the following colloquy between the trial court and J.K.'s mother demonstrates that "the court was improperly focused on the mother's ability to pay" (Appellant's Br. p. 9):

> [COURT]: If [J.K.] owed a bunch of money, how would he get it?

[MOTHER]: If he owed a bunch of money?

[COURT]: Yeah.

[MOTHER]: He would have to get it from me.

[COURT]: What about mowing yards, things like that? He's capable of doing those sorts of things?

[MOTHER]: I don't know if he know, we have a tractor lawn mower. I don't know that he knows about push mowers.

[COURT]: Well . . .

[MOTHER]: . . . I guess he'd be capable if he was taught how to use it.

[COURT]: Would you make him work off some if you paid it? Would you make him work off some money if you paid it?

[MOTHER]: If I paid.

[COURT]: He's going to owe some restitution. I'm curious . . .

[MOTHER]: . . . Uh huh . . .

[COURT]: . . . You said that you'd pay it, well how's he going to pay you back?

[MOTHER]: He would have no way to pay me back.

[COURT]: What about free manual labor around the house? Can he do chores?

[MOTHER]: He does chores now, yes.

[COURT]: Is he capable of earning some bucks in the neighborhood? You said he likes to sweep the barber shop, things like that. Any reason why he couldn't go out and earn some money of his own?

[MOTHER]: No, not if somebody gonna pay him to do something around the neighborhood.

[COURT]: Alright.

[MOTHER]: Most the people in our neighborhood have everything paid for. They have lawn services and all that . . .

[COURT]: . . . Alright. . .

[MOTHER]: . . . But, yeah. If someone's willing to pay him to clean up something or . . .

[COURT]: . . . He committed a theft and there are people that are harmed because of it. Shouldn't he be responsible for paying?

[MOTHER]: Yeah.

(Tr. pp. 15-16) (ellipsis in original).

We find that it was J.K.'s mother—not the trial court—who first suggested that she would have to pay the restitution if it was ordered. In response, the trial court focused on the fact that the restitution was J.K.'s responsibility and geared its questions to J.K.'s mother as to J.K.'s ability to earn money. Accordingly, we find no merit in J.K.'s contention that the trial court improperly inquired into J.K.'s mother's ability to pay the restitution on behalf of J.K.

## CONCLUSION

Based on the foregoing, we conclude that the trial court acted within its discretion in ordering J.K. to pay $800.00 in restitution, but we remand with instructions for the trial court to fix a deadline by which J.K. must satisfy his obligation.

Affirmed in part and remanded in part.

Brown, J. and Altice, J. concur